# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In Re:

Jeffrey Marc Siskind,

Debtor.

Case No.: 13-13096-PGH

Chapter 11

_____/

**DEBTOR'S PRODUCTION IN RESPONSE TO HSBC BANK USA, N.A.'S NOTICE OF TAKING RULE 2004 EXAMINATION OF JEFFREY M. SISKIND**

Debtor responds to HSBC Bank USA, N.A.'s Notice of Taking Rule 2004 Examination of Jeffrey M. Siskind by producing responsive documents as requested in Exhibit "A" thereto, via successive e-mail(s), except if protected by a privilege, in which case Debtor has asserted its claim(s) of privilege herein, and in the Privilege Log which follows these responses, as follows:

1. Debtor does not possess any responsive documents.

2. Debtor does not possess any responsive documents.

3. Debtor does not possess any responsive documents.

4. Debtor does not possess any responsive documents.

5. i. Transamerican Comercial, Ltd. is an offshore company which I believe was established approximately 25 years ago to manage the affairs of my father's trust. At one point, I believe that the company held title to a defunct race track property in New Mexico. I recently learned that the company lapsed some years ago. I have never seen a tax return for this entity.

ii. 341 53rd Street Trust is a trust which I established to hold title to a recently acquired duplex in West Palm Beach, Florida. The trust has not received any income, and no tax returns were filed for this entity.

iii. I am not aware of any interest which I have in an entity named 226 Marina

Bay Trust. This may have been an entity which I created for a client.

   iv. Second Siskind Family Trust is an entity which I created, and which I believe holds title to a 1981 Cadillac. The trust is not required to file any tax returns.

   v. 1-800-Serve-Em, Inc. is an entity which is located at my office address. I am not aware of any association which I have with that entity other than serving as its counsel.

   vi. Hailey Acquisitions, LLC is an entity which belongs to a client, and in which I do not possess an interest.

vii. TP5, LLC is a Florida limited liability company which was established in 2007 and is wholly owned by me. Income for this entity, for which I serve as resident agent, President, Vice President and as a director, were included on my personal tax returns, on Schedule C.

   viii. In The Weeds Productions, LLC, for which I serve as registered agent and managing member, was established in 2012. There was no requirement to file a tax return in 2012.

   ix. Downtown Bike Taxi, Inc. is an entity which may be located at my office address, and with which I don't believe I have any association whatsoever.

   x. Aviatat, LLC, for which I serve as registered agent, was formed in 2013 and has never filed a tax return.

   xi. Florida's Association of Community Banks and Credit Unions, Inc., for which I serve as registered agent and President, was established in 2012 but was not required to file a tax return.

   xii. Sympatico Equine Rescue, Inc., for which I serve as registered agent and President, was established in 2013 and has never filed a tax return.

   xiii. I have no recollection whatsoever of an entity named Lake View heights/Pine

Crest Cemetery Neighborhood Association, Inc.

xiv. Stars and Stripes Foundation for Pro Bono Legal Support, Inc., fro which I served as registered agent and President, was established in 2006, but lapsed on September 26, 2008. The entity was never required to file a tax return.

xv. Palm Beach Jewelry and Antique Center, Inc. was established for a client, and I have no interest in this entity.

xvi. Siskind Legal Services, LLC is a lapsed Florida limited liability company which was wholly owned by me and with which I operated my law firm. Revenues and expenses for this entity were reported on my personal tax return on Schedule C.

xvii. PC Alan Nash, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xviii. PC Surfside Beach, LLC is/was an entity which I may have established for a client, but with which I never held an interest, now hold no interest and for which I have never seen a tax return.

xix. PC Balto Sag, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xx. PC Carlyle Deco, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxi. PC Four Eleven, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have

never seen a tax return.

xxii. Radius Twelve Zero Three, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxiii. Radius PHL Two, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxiv. PC Three Zero three, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxv. PC Eighteen Sixteen, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xvi. Operate (sic Opera) Place Residential Holdings, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xvii. 1831 N. Dixie, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxviii. Siskind Legal Solutions of South Florida, LLC was established to provide 'packaged' legal services in 2005, but lapsed on September 26, 2008. This entity, for which I served as registered agent and member/manager, never received any income.

xxix. Legacy Holdings - MI, LLC is/was an entity which I may have established

for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxx. Boca Bay Development Group I, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxxi. Fiore 7102, LLC was established to hold title to a residential condominium which is located in Palm Beach Gardens, Florida. The entity never realized any income, lapsed on September 14, 2007, and was not required to file any tax returns. I served as registered agent.

xxxii. Intelligent Title Solutions of South Florida, LLC was established in 2006 but lapsed on September 14, 2007. I served as registered agent for this entity, and do not possess any tax returns for same.

xxxiii. Duvall, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxxiv. Jurismortgage Practice Resources, LLC was established in 2006 to provide mortgage products to law firms. The entity, which lapsed on September 14, 2007, never realized any income and was not required to file any tax returns. I served as registered agent for this entity.

xxxv. Collective Management Associates, LLC was established in 2009 to manage an agricultural facility located in California, and for which I served as resident agent and manager. Although the entity lapsed on September 23, 2011, it produced and filed tax returns and I received K-1s which, if required, were included with my personal tax returns. You were provided with my personal tax returns in response to your production request on Friday, October

25, 2013.

xxxvi. Collective Management Consultants, LLC was established in 2009 to manage other agricultural facilities but which was never utilized, lapsed on September 24, 2010, never earned income and was never required to file tax returns. I served as registered agent for this entity.

xxxvii. Castle Assets, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxxviii. Panga Properties, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xxxix. Foundation for the Study and Treatment of Blood-Borne Viral and Bacterial Diseases, Incorporated was established in 2002 and lapsed on September 16, 2005. At about that time, I believe that this entity for which I served as registered agent and a director stopped doing business.

xl. Miami First Fridays, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xli. Poinciana Title Company was established in 2001 but lapsed on October 4, 2002. At about that time, I believe that this entity for which I served as registered agent and a director stopped doing business.

xlii. Portfolio Investment Properties, Inc., fro which I served as registered agent and as a director, was established in 2001 but lapsed on October 4, 2002.

xliii. My 1031 Exchange, Inc. was established in 2003, but lapsed on October 1, 2004. I served as registered agent.

xliv. Finn Distributing, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xlv. Consolidated Engineering of Florida, Inc. was established I 2003, but lapsed on October 1, 2004. I served as registered agent and as a director. Although I believe that it conducted business, I have never seen a tax return for this entity.

xlvi. Waterhouse Real Estate Brokers, Inc. was established in 2005 but lapsed on September 26, 2008, before which I believe that the entity ceased doing business. I served as President, Secretary, Treasurer and as a director, but I am unable to locate records for this entity.

xlvii. Poinciana Processing, Inc. was established in 2006, but lapsed on September 26, 2008, before which I believe that the entity ceased doing business. Although I served as Chairman, I was not able to locate any records for this entity.

xlviii. International Marketing Management Corporation is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

xlix. Virgin Olive Restaurants, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

l. Tami, Incorporated is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

li. Rezza Properties, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

lii. TP3, LLC was a Florida limited liability company wholly owned by me which I established in 2005, and which lapsed on September 26, 2008. This entity held title an office condominium unit in West Palm Beach, Florida, and its revenues and expenses were included on my personal tax return, on Schedule C.

liii. Liquidation Auto, LLC is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

liv. JXL International, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

lv. JXL Communications Corp. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

lvi. Law Center of the Palm Beaches, Inc. was established in 2002, but lapsed on October 4, 2002. I served as registered agent and as a director.

lvii. Patriot Residential Properties, Inc. was established in 2002. The entity, for which I served as registered agent and as a director, lapsed on September 19, 2005, but may have continued to do business until 2005.

lviii. Tony Moorer Kevin Kendrick Promotions, Inc. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest

and for which I have never seen a tax return.

lix. Kanaris Corp. is/was an entity which I may have established for a client, but with which I have never held an interest, now hold no interest and for which I have never seen a tax return.

lx. Hopkins Tanning, Inc. was a former business which I established in Baltimore, Maryland and which has not been in business for more than 20 years.

lxi. Crimson Construction, Inc. was a former business which I established in Baltimore, Maryland and which has not been in business for more than 20 years.

lxii. Tradewind Charters, Inc. was a former business which I established in Annapolis, Maryland and which has not been in business for more than 20 years.

lxiii. Law Office of Jeffrey Siskind, a/k/a Siskind Legal, refers to my law practice which is located in West Palm Beach, Florida. Income earned by the office is included in my personal tax return on Schedule C.

6. Copies of all bank records, except records belonging to or otherwise pertaining to Debtor's legal clients to which Debtor asserts are privileged pursuant to prior and/or existing attorney-client relationships including but not limited to records pertaining to trust accounts containing client funds, are produced. Debtor has no records of savings accounts, investment accounts, or mutual funds.

7. Debtor does not possess any responsive documents.

8. See response to Item No. 5.

9. See response to Item No. 5.

10. See response to Item No. 5.

11. Copies of all insurance policies in debtor's possession are produced.

12. Debtor asserts that the value of debtor's business can be discerned from monthly debtor-in-possession reports which are filed in the above styled case. Debtor believes that there exist numerous documents from which the value of Collective Management Associates, LLC can be discerned, but which are not in debtor's possession.

13. Debtor does not possess any pay stubs, records of settlements which Debtor is permitted to disclose, records of gifts from others, inheritances and/or other records which would evidence Debtor's income, except tax returns which were previously provided, although Debtor recalls having received 'Bush' tax refunds in one or more prior years.

14. Debtor does not possess any documents pertaining to any securities or negotiable instruments owned by Debtor or any entity identified in paragraph 5.

15. Debtor does not possess any responsive documents, but see Debtor's schedules A and B which were filed by Debtor in the above styled case.

16. Debtor does not possess any responsive documents, but see most recent accounts receivable report. Debtor asserts a privilege as to any and all documents which may contain confidential information related to Debtor's legal clients.

17. Debtor is not now in possession of any document which is responsive to this request, but states that any such document related to real property is a matter of public records, and as such is available online. Debtor further states that there were such transfers of real property in Palm Beach County in either 2012 or 2013, Florida and North Carolina, and transfers of shareholder interests in Collective Management Associates, LLC in 2009 and 2010. Debtor asserts a privilege as to any and all documents which may contain confidential information related to Debtor's legal clients.

18. Debtor does not possess any responsive documents. Debtor asserts a privilege as to any and all documents which may contain confidential information related to Debtor's legal clients.

19. Debtor does not possess any responsive documents, except that Debtor made numerous payments on the mortgage loan pertaining to the real property located at 401 Carysfort Road, Key Largo, Florida, and documents attesting to at least seven (7) of which was already provided to HSBC Bank USA, N.A.

20. Debtor does not possess any responsive documents. Debtor asserts a privilege as to any and all documents which may contain information related to Debtor's legal clients.

21. Debtor does not possess any responsive documents. Debtor asserts a privilege as to any and all documents which may contain information related to Debtor's legal clients.

22. Debtor does not possess any responsive documents.

23. Debtor has produced the requested documents which are in debtor's possession.

24. Debtor does not possess any responsive documents.

25. Debtor does not possess any responsive documents, except registrations for a waverunner a/k/a jetski and a helicopter which Debtor will produce when located by Debtor. Debtor asserts a privilege as to any and all documents which may contain information related to Debtor's legal clients.

26. Debtor does not possess any documents which are responsive to this request, except that debtor will produce registration cards for the vehicles identified in paragraph 25 (i), (ii), (iii) and (iv), and believes that a picture of the Cadillac identified in paragraph 25(iii) can be obtained; if so same will be furnished when same is obtained.

27. The 2000 Volvo S80 identified in paragraph 25.(v) was given away several years ago by Debtor.

28. Debtor does not possess any responsive documents which were not disclosed and/or produced in response to prior requests herein.

29. Debtor does not possess any responsive documents.

30. Debtor does not possess any responsive documents.

31. Debtor does not possess any responsive documents.

32. Debtor does not possess any responsive documents.

33. Debtor does not possess any responsive documents.

34. Debtor does not possess any responsive documents, except that a picture of the Robinson R-22 helicopter is available on Debtor's *Facebook* page.

35. Debtor does not possess a responsive document.

36. Debtor does not possess any documents "as of" the petition date and requests further clarification of this request as being either before or after said date.

37. Debtor does not possess any responsive documents.

38. Debtor cannot locate any responsive documents, however there exist several of such trusts, one or more of which Debtor has provided at its Meeting of Creditors.

39. Debtor does not possess any responsive documents which are not protected by attorney-client privilege.

## Privilege Log

Debtor hereby claims as privileged and not subject to discovery that entire category of documents consisting of any and all documents of any nature which would disclose information pertaining to Debtor's legal clients, none of which have waived their right to confidentiality, and

which documents include but are not limited to client correspondence, payment and other financial records, and other documents which may contain information which said legal clients would consider to be of a confidential nature and would assume would be kept confidential by counsel. In responding to the above requests for production of documents, Debtor has claimed said attorney-client privilege where debtor believes that said privilege applies, and incorporates said claims herein.

_____/s/ Jeffrey M. Siskind_____
Jeffrey M. Siskind, Pro Se
525 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
TEL   (561) 832-7720
FAX   (561) 832-7668
jeffsiskind@msn.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served by e-mail to RPC@ecclegal.com this 15th day of November, 2013.

_____/s/ Jeffrey M. Siskind_____
Jeffrey M. Siskind, Pro Se

# EXHIBIT D

# Reducing Privilege Log Costs in Corporate Litigation

By **David R. Singh** and **Alexander W.F. Ng**

Creating a privilege log is one of the most labor-intensive and expensive parts of the discovery process. Customarily, documents withheld on the basis of privilege are described on a document-by-document basis on a privilege log. The log typically lists the author, recipient, dates, subject matter, and other information sufficient for the other party to challenge the claim of privilege. In recent years, the widespread use of email, coupled with the ease of copying attorneys on communications, has dramatically increased the number of potentially privileged documents that must be collected, reviewed, and logged. The common practice of replying to emails by including the received email in the reply, frequently resulting in long email chains, further increases the cost of creating a privilege log.

Courts have acknowledged both the tremendous expense incurred by litigants, who must create the privilege log, and the strain on the courts, which must often resolve privilege disputes through in camera review of documents withheld as privileged.[1] The burden of creating these logs and adjudicating privilege disputes is especially pronounced in litigation that involves protracted discovery and large corporate defendants with many document custodians, and it is frequently used as a source of leverage for individual litigants with relatively few responsive documents. In some large multi-district disputes, courts have resorted to appointing special masters to oversee discovery and privilege disputes, greatly increasing the overall costs to the courts and to the litigants.[2]

How can litigants rein in the escalating cost of creating privilege logs in the age of electronic discovery? While expenses related to the preparation of a privilege log are not entirely avoidable, the following are some practical solutions for reducing the cost of preparing privilege logs in corporate litigation.

One way to reduce the costs associated with creating a privilege log is not to prepare a document-by-document log detailing each of the documents withheld as privileged when doing so would be wasteful. Under Rule 26(b)(5) of the Federal Rules of Civil Procedure, when documents are withheld on the basis of privilege or as trial-preparation material, the withholding party must "expressly make the claim" and describe the withheld documents in a manner that will "enable other parties to assess the claim." While this requirement is customarily satisfied by the preparation of document-by-document privilege logs, the Federal Rules of Civil Procedure do not specify the format of the privilege log, nor do they mandate that a document-by-document log must always be prepared. Rather, the Advisory Committee Notes following Rule 26 indicate that a document-by-document privilege log may be inappropriate in some circumstances. Rule 26, the Advisory Committee notes,

> does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, *but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories*.[3]

Thus, the Federal Rules of Civil Procedure expressly provide for the possibility that withheld documents be logged by categories under certain circumstances.

The Advisory Committee further notes that a "party can seek relief through a protective order under subdivision (c) if compliance with the requirement for providing this information [for asserting privilege] would be an unreasonable burden." Subdivision (c) of Rule 26 provides that, upon motion by a party from whom discovery is sought, the court "may, for good cause, issue an order to protect a party or person from . . . undue burden or expense."[4] If a court determines that the burden or expense of the proposed discovery outweighs its likely benefit, the court must limit the discovery as appropriate.[5]

One situation where categorical logging may be appropriate is where there are voluminous post-litigation communications among counsel for the corporation and/or between counsel for the corporation and counsel for other parties in a joint defense or prosecution group. In such cases, the burden of document-by-document logging of post-litigation communications involving counsel is likely to outweigh the benefit. In terms of the burden on the withholding party, the number of documents that need to be logged is likely to be enormous, and an ongoing duty to provide a document-by-document privilege log would possibly chill written communication among counsel for the corporation and/or between counsel for the corporation and counsel for other parties in a joint defense or prosecution group. In contrast, the benefit of a document-by-document log would be minimal because post-litigation communications among counsel are, with few exceptions, of minimal probative value and are almost assuredly privileged. In such cases, where the burden of logging on a document-by-document basis is enormous and the putative benefits are minimal, there is a good basis for logging post-litigation communications among counsel only categorically.

Federal courts have specifically considered and endorsed such categorical

logging. In *In re Imperial Corporation of America v. Shields*, for example, the court had to decide whether the plaintiffs had to submit a privilege log on a document-by-document basis.[6] Defendant sought documents between plaintiffs' various counsel and plaintiffs themselves concerning the lawsuit. There was no dispute that most of these documents—numbering perhaps in the millions and involving about 50 parties—were created either during the course of the litigation or before the initiation of the litigation when the subpoenaed parties were representing plaintiffs in anticipation of litigation. The court noted that "it would be foolish to believe that very many of those documents would be other than protected by the attorney-client privilege or work product."[7] Under these circumstances, "[t]o force the creation of a document-by-document privilege log of documents of that magnitude is unreasonable and overly burdensome." The court ruled that plaintiffs need only produce a privilege log detailing an aggregate listing of the numbers of the withheld documents, the dates of these documents, and an affidavit representing that the documents were attorney-client communications or work product.[8]

Another way for the withholding party to reduce the cost of creating a privilege log is to log email chains in a single entry. Email chains result from the common practice of replying to emails by including the previously received email or emails in the reply, thereby creating a chain of emails. If each email in a chain is logged separately, email chains can exponentially increase both the amount of work that is required to prepare (and quality check) a privilege log and the overall size of the log.

Federal courts, however, are divided as to whether email chains should be logged as multiple entries (one entry for each email in the email chains) or a single entry in a privilege log. In *In re Universal Services Fund Telephone Billing Practices Litigation*, the court rejected the defendant's position that a single identification of email chains on a particular subject is sufficient as to all the individual communications they contain. The major flaw with such a practice of logging email chains, the court noted, is "stealth claims of privilege, which, by their very nature, could never be the subject of a meaningful challenge by opposing counsel or actual scrutiny by a judge."[9] Similarly, the court in *St. Andrews Park, Inc. v. U.S. Dept. of Army Corps of Engineers*[10] ruled that the government's privilege log is insufficient where the government did not individually list the emails in email chains, did not identify the author and recipient and their roles for each email, and did not identify the non-privileged portions, if any.[11]

> *Counsel for a corporation with abundant documents should be mindful of the potential costs associated with the preparation of privilege logs early in a case and should begin negotiating with opposing counsel early in the discovery process.*

Other courts, however, have held that a single entry is sufficient for email chains and indeed necessary to prevent giving the false impression that the emails in the chain are separate. In *United States v. ChevronTexaco Corp.*, the court held that email chains should be logged as a single entry. "Addressing each email separately," the court observed, "does not accurately reflect what was communicated with that email because each (chronologically) successive email apparently attached those that preceded it."[12] The court in *Muro v. Target Corporation* agrees.[13] In this case, the court rejected a magistrate judge's determination that a privilege log was inadequate because email chains were listed as one document. The court reasoned that a non-privileged email forwarded to an attorney may render the entire email chain privileged, even though the non-privileged email must be disclosed.[14] As a practical matter, the court was concerned that requiring a party to list every email in an email chain may be confusing, as parts of that email chain may have been disclosed as non-privileged. Importantly, the court cautioned that logging every email in an email chain may allow the other party to piece together privileged information about the contents of materials forwarded to attorneys.

Courts that oppose the logging of email chains as one entry are primarily concerned that parties may be withholding non-privileged communications and/or providing insufficient information for assessing the privilege claim. The court in *In re Universal Telephone* acknowledged that logging of email chains as one entry is sufficient where "each and every separate email within a strand is limited to a distinct and identifiable set of individuals, all of whom are clearly within the attorney-client relationship in which legal advice is being sought or given."[15]

Given the split in authority concerning whether email chains may be logged in a single entry, counsel for the corporation must carefully research the requirements for a privilege log in the particular jurisdiction. When the jurisdiction permits logging of email chains in a single entry, counsel for the corporation should nevertheless be sure to provide information sufficient for the other party to assess the assertion of privilege. If an email chain contains different subject matters, senders, and recipients, the log entry should identify the subject matters and the relevant senders and recipients. If a responsive non-privileged email is part of an email chain, the withholding party should produce the email chain with the privileged portions redacted (unless the non-privileged portions were disclosed elsewhere already). And, if an otherwise privileged email chain is later forwarded to a third-party such that the privilege has been waived, the withholding party should produce the email chain.

Counsel for a corporation with abundant documents should also be mindful of the potential costs associated with the preparation of privilege logs early in a

Continued on page 22

**Reducing Privilege Log Costs in Corporate Litigation**
Continued from page 9

case and should begin negotiating with opposing counsel regarding the scope of privilege logs early in the discovery process. Specifically, counsel should:

(1) **Attempt to reach agreements regarding the scope of discovery.**
- Have the Rule 26(f) conference as early as possible to decide on a discovery plan.[16]
- For the scope of discovery, agree on a reasonable cutoff date (e.g., the complaint's filing date).
- For the privilege log, try to agree that communications involving counsel post-dating the filing of the complaint need not be collected, reviewed, and logged. Also try to secure an agreement that the files of counsel post-dating the litigation need not be searched.
- If an agreement cannot be reached, suggest alternatively that communications involving counsel created after the commencement of the action be logged categorically.

(2) **Define the exact format and substance of the privilege log.**
- Specify the type of information needed on the privilege log to avoid needless disputes and potential motion practice later.
- Reach an agreement that privileged email chains be logged as one entry.
- If the other party resists, affirm that all information sufficient for the party to challenge the claim will be provided and that non-privileged portions of email chains will be produced.

(3) **Reduce agreement to an order.**
- Request that the court include any agreements on the scope of the privilege log and any other discovery matters in an order.[17]

(4) **If all else fails, move for protective order.**

- If the other party refuses to compromise on the scope of the privilege log, move for a protective order under Rule 26(c).
- To convince the court of the burden of logging post-litigation communications involving counsel on a document-by-document basis, estimate the total number of documents that will need to be reviewed after applying search terms, if any.
- Support the motion with declaration setting forth in as much detail as possible the burden of collecting, reviewing, and logging the documents.

While the burdens of preparing a privilege log cannot be avoided entirely, with proper planning and foresight, the withholding party should be able to substantially reduce some of the burden and minimize unnecessary expenses. ■

**David R. Singh** is an associate at Weil, Gotshal & Manges, LLP in its New York office. He may be reached at david.singh@weil.com. **Alexander W.F. Ng** is an associate at Weil, Gotshal & Manges, LLP in its New York office. He may be reached at alexander.ng@weil.com.

**Endnotes**

1. In the multidistrict litigation over the painkiller Vioxx, the court remarked that the discovery disputes in the case "at times... seemed hopelessly endless." Merck produced over two million documents and asserted privilege over approximately 30,000 documents. Merck initially submitted 81 boxes containing approximately 500,000 pages of documents for the court's in camera review to determine privilege. See In re Vioxx Prod. Liab. Litig., 501 F. Supp. 2d 789 (E.D. La. 2007).
2. See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., No. 00 Civ. 1898 (S.D.N.Y. June 18, 2004) (Order Appointing Special Discovery Master); In re Vioxx, 501 F. Supp. 2d 789 (granting in part defendant's motion to adopt in part Special Master's Report and Recommendations). The need for Special Masters to resolve privilege disputes is likely to expand due to the volume of electronic documents that are subject to assertions of privilege. See The Hon. Shira A. Scheindlin & Jonathan M. Redgrave, "Special Masters and E-Discovery: The Intersection of Two Recent Revisions to the Federal Rules of Civil Procedure," 30 CARDOZO L. REV. 347, 385 (2008).
3. See, e.g., Securities and Exchange Commission v. Thrasher, 1996 WL 125661, *1 (S.D.N.Y. May 1, 1995) (although typically a privilege log must identify each withheld document and provide basic information, "courts retain some discretion to permit less detailed disclosure in appropriate cases"; detailed privilege log is inappropriate where "(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded").
4. Fed. R. Civ. P. 26(c).
5. Fed. R. Civ. P. 26(b)(2)(C)(iii).
6. 174 F.R.D. 475 (S.D. Cal. 1997).
7. Id. at 479.
8. See also United States of America v. Magnesium Corp. of America, 2006 WL 1699608, *5 (D. Utah, June 14, 2006) (no detailed privilege log was necessary where the documents to be logged would be in the thousands, in part because it "seem[ed] clear that most of the documents [generated since the commencement of the litigation]... would be protected from disclosure by the work product privilege, the attorney-client privilege, or the joint defense privilege").
9. 232 F.R.D. 669, 673 (D. Kan. 2005).
10. 299 F. Supp. 2d 1264 (S.D. Fla. 2003).
11. See also Rhoads Indus., Inc. v. Building Materials Corp. of America, 254 F.R.D. 238, 2008 WL 5082993 (E.D. Pa. Nov. 26, 2008) (holding that each individual email must be logged to be protected and requiring claimant to go back and prepare logs for each email within the email strings that had not previously been separately logged).
12. 241 F. Supp. 2d 1065, 1074 (N.D. Cal. 2002).
13. 250 F.R.D. 350, 362–63 (N.D. Ill. 2007).
14. Id. at 363.
15. 232 F.R.D. at 673.
16. See Fed. R. Civ. P. 26(f) ("the parties must confer as soon as practicable" to "develop a proposed discovery plan").
17. See Fed. R. Civ. P. 26(f)(3)(D) ("any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production— whether to ask the court to include their agreement in an order").