**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

| In re: | Case No. : 13-13096-BKC-PGH |
|---|---|
| JEFFREY M. SISKIND | Chapter 11 |
| _____Debtor._____/ | |

**DISCLOSURE STATEMENT IN CONNECTION WITH PLAN PROPONENT, HSBC BANK USA, NATIONAL ASSOCIATION'S PLAN OF REORGANIZATION FOR JEFFREY M. SISKIND**

<u>IMPORTANT</u>: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS DEBTOR'S CHAPTER 11 PLAN. PLEASE READ THIS DOCUMENT WITH DUE CARE.

**Submitted on May 1, 2014 by:**

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive, Suite 300**
**Miami, Florida  33131**
**T. 305.722.2002      F. 305.722.2001**
**Jacqueline Calderin- Fla. Bar No. 134414**
**jc@ecclegal.com**
*Attorneys for Plan Proponent, HSBC Bank, N.A.*

# TABLE OF CONTENTS

**ARTICLE I.    INTRODUCTION** .................................................................. 1
    **A.**    **Background** ............................................................... 1
    **B.**    **Generally** .................................................................. 1
    **C.**    **Definitions** ............................................................... 4

        **1.1. Administrative Claims** ........................................ 4

        **1.2. Allowed Administrative Expense Claim** ............... 4

        **1.3. Allowed Claim** ................................................... 4

        **1.4. Allowed Priority Tax Claim** ................................ 4

        **1.5. Allowed Secured Claim** ...................................... 4

        **1.6. Allowed Unsecured Claim** .................................. 5

        **1.7. Anniversary Date** ............................................... 5

        **1.8. Anniversary Month** ............................................ 5

        **1.9. Bankruptcy Code** ............................................... 5

        **1.10.    Bankruptcy Court or Court** ............................. 5

        **1.11.    Bankruptcy Rules** ........................................... 5

        **1.12.    Claims Bar Date** ............................................ 6

        **1.13.    Claims Summary** ............................................ 6

        **1.14.    Causes of Action** ........................................... 6

        **1.15.    Claim** ............................................................ 6

        **1.16.    Claimant** ...................................................... 6

        **1.17.    Class** ............................................................. 6

        **1.18.    Confirmation** ................................................ 6

        **1.19.    Confirmation Date** ........................................ 7

        **1.20.    Confirmation Order** ...................................... 7

        **1.21.    Creditor** ....................................................... 7

        **1.22.    Debtor** ......................................................... 7

        **1.23.    Disputed Claim** ............................................. 7

        **1.24.    Effective Date** ............................................... 7

        **1.25.    Estate** ........................................................... 7

        **1.26.    Final Order** .................................................. 7

        **1.27.    Financial Advisor** ......................................... 8

        **1.28.    Impaired Class** ............................................. 8

        **1.29.    Law Office** ................................................... 8

        **1.30.    Lien** ............................................................. 8

        **1.31.    Net Disposable Income** ................................. 8

        **1.32.    Order** ........................................................... 8

        **1.33.    Petition** ........................................................ 8

        **1.33.    Petition Date** ................................................ 8

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

| | 1.35. | Plan | 8 |
|---|---|---|---|
| | 1.36. | Plan Fund | 8 |
| | 1.37. | Plan Period | 9 |
| | 1.38. | Plan Payment | 9 |
| | 1.39. | Pro Rata | 9 |
| | 1.40. | Proceeding or Proceedings | 9 |
| | 1.41. | Professionals | 9 |
| | 1.41. | Proponent | 9 |
| | 1.43. | Reorganized Debtor | 9 |
| | 1.44. | Scheduled | 9 |
| | 1.45. | Schedules of Assets and Liabilities | 9 |
| | 1.46. | Siskind | 9 |
| | 1.47. | U.S. Trustee | 9 |
| D. | | Purpose of this Document | 9 |
| | | | |
| **ARTICLE II.** | | **OVERVIEW OF CHAPTER 11** | **10** |
| A. | | Brief Explanation of Chapter 11 | 10 |
| B. | | Voting on the Plan | 10 |
| C. | | The Confirmation Hearing | 12 |
| D. | | Confirmation | 12 |
| | | | |
| **ARTICLE III.** | | **BACKGROUND OF THE DEBTOR AND HIS BANKRUPTCY CASE** | **14** |
| A. | | The Commencement of the Chapter 11 Bankruptcy Case | 14 |
| B. | | Claims in Jeffrey Siskind's Bankruptcy Case | 14 |
| | 1. | Unsecured Claims | 14 |
| | 2. | Bar Date for Filing Proofs of Claims | 14 |
| | 3. | Claims Objections Generally | 15 |
| | | | |
| **ARTICLE IV.** | | **DEADLINES FOR VOTING AND OBJECTING** | **15** |
| A. | | Final Hearing to Approve the Disclosure Statement and Plan | 15 |
| B. | | Deadline for Voting to Accept or Reject the Plan | 15 |
| C. | | Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan | 16 |
| D. | | Sources of Information | 16 |
| E. | | Disclaimer | 17 |
| | | | |
| **ARTICLE V.** | | **SUMMARY OF THE SISKIND PLAN AND DISTRIBUTION SCHEME** | **18** |
| A. | | Sources Of Plan Funding. | 18 |
| B. | | Classification of Claims and Interests in the Plan | 19 |
| | 1. | Manner of Classification of Claims and Interests and Unclassified Claims | 19 |
| | | a. Administrative Expense Claims | 20 |

iii

           b.   Administrative Bar Date ........................................................20

           c.   Professional Fee Claims........................................................20

    2.       Classified Claims ............................................................................ 21

           a.   Class 1.  Allowed Claims of the Internal Revenue Service.............21

           b.   Class 2.  Allowed Claims of the Palm Beach
                County Tax Collector. ....................................................21

           c.   Class 3.  Allowed Secured Claim of U.S. Bank National
                Association, as Trustee, successor in interest to Bank of America,
                National Association as Trustee as successor by merger to Lasalle
                Bank, National Association as Trustee for WaMu Mortgage Pass-
                Through Certificates Series 2007-OA5 Trust...................................22

           d.   Class 4.  Allowed Secured Claim of HSBC Bank USA, National
                Association as Trustee for Nomura Home Equity Loan, Inc., Asset
                Backed Certificates, Series 2007-1 ........................................ 22

           e.   Class 5.  Allowed Claim of George and Jeri Maler........................23

           f.   Class 6.  Allowed Claim of Fiore at Gardens
                Condominium Association, Inc...........................................23

           g.   Class 7.  Allowed General Unsecured Creditors. ............................23

           h.   Class 8.  Equity Interest of Jeffrey M. Siskind................................24

**ARTICLE VI.**   **TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.. 24**

    A.       Claims and Interests ........................................................................24

**ARTICLE VII.**   **TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE**
                **CLAIMS AND U.S. TRUSTEES FEES**........................................ 25

    A.       Allowed Administrative Expense Claims........................................25

    B.       United States Trustee Fees ...............................................................26

**ARTICLE VIII.** **PROVISIONS REGARDING VOTING**
                **AND DISTRIBUTIONS UNDER THE PLAN** ........................................ 26

    A.       Ballots and Voting Deadline............................................................26

    B.       Claimholders Entitled to Vote .........................................................26

    C.       Bar Date for Filing Proofs Claim ....................................................28

    1.       Pre-Petition .................................................................................... 28

    D.       Definition of Impairment ................................................................28

    E.       Disallowed Claims ..........................................................................29

    F.       Acceptance by Class of Claimholders .............................................29

    G.       Cramdown ......................................................................................29

    H.       Classes Impaired Under the Siskind Plan .......................................30

    I.       Vote Required for Class Acceptance................................................30

    J.       Information on Voting and Ballots...................................................30

    1.       Transmission of Ballots to Claimholders ....................................... 30

    2.       Ballot Tabulation Procedures ........................................................ 31

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**ARTICLE IX.**    **CONFIRMATION OF PLAN** ................................................. **33**
    **A.**    **Solicitation of Acceptances** ................................................33
    **B.**    **Requirements for Confirmation of the Plan** ..........................**34**
    **C.**    **Acceptances Necessary to Confirm the Plan** .........................36
    **D.**    **Cramdown** ........................................................................36
    **E.**    **Execution of Ballots by Representatives.** ..............................**38**
    **F.**    **Waivers of Defects and Other Irregularities Regarding Ballots.** ............ **38**
    **G.**    **Withdrawal of Ballots and Revocation.** ................................ **39**

**ARTICLE X.**    **EFFECTS OF CONFIRMATION OF PLAN AND DISCHARGE** ......... **40**

**ARTICLE XI.**    **POSSIBLE CAUSES OF ACTION AFTER CONFIRMATION** ........... **40**

**ARTICLE XII.**    **TAX IMPLICATIONS OF THE PLANS** ..................................... **42**

**ARTICLE XIII.**    **LIQUIDATION ANALYSIS** .......................................................... **42**

**ARTICLE XIV.**    **MISCELLANEOUS** ....................................................................... **44**
    **A.**    **Modification** ......................................................................44
    **B.**    **Confirmation Order Controls.** ............................................44
    **C.**    **Effectuating Documents and Further Transactions.** ...............44
    **D.**    **Substantial Consummation of the Plan.** ...............................45
    **E.**    **Terms of the Plan are Binding.** ..........................................45
    **F.**    **Injunction** .........................................................................45
    **G.**    **Taxes** ................................................................................46

**ARTICLE XV.**    **RETENTION OF JURISDICTION BY**
               **THE BANKRUPTCY COURT** ................................................. **47**

**ARTICLE XVI.**    **RECOMMENDATION OF CONFIRMATION** ...................................... **48**

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## **LIST OF EXHIBITS**

Exhibit "A"          Plan Proponent's Plan of Liquidation

Exhibit "B"          Liquidation Analysis

Exhibit "C"          Claims Analysis

Exhibit "D"          Five Personal Year Cash Flow and Business
                     Projections

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

# ARTICLE I.
## INTRODUCTION

**A.      Background:**

Creditor, HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc. Asset Backed Certificates, Series 2007-1 ("HSBC Bank" or "Plan Proponent")[1], by and through its authorized agent, Attorney's Title Insurance Fund, submits this Disclosure Statement (the "Disclosure Statement") in connection with the solicitation of acceptance of *Plan Proponent's Second Amended Plan of Reorganization for Jeffrey M. Siskind* (the "Plan"), which is attached hereto as **Exhibit "A"** in the Chapter 11 Case of Jeffrey M. Siskind (the "Debtor"). Holders of Claims and Interests are urged to refer to the Plan for a full and complete statement of its specific terms, including the treatment proposed to the various Classes of Claims and Interests.

Subsequent to the expiration of the exclusive period during which the Debtor could file a Chapter 11 plan, on October 28, 2013, HSBC Bank filed its *Chapter 11 Plan of Liquidation* [ECF # 108], and Disclosure Statement in Connection with *Plan Proponent's Plan of Liquidation* [ECF #107].  Pursuant to lengthy negotiations with the Debtor, HSBC filed its *Amended Chapter 11 Plan of Reorganization* [ECF #120] and *Amended Disclosure Statement in Support of the Amended Chapter 11 Plan of Reorganization* [ECF #121] on November 18, 2013. The filing of this third Plan and Disclosure Statement is the result of the Plan Proponent's successful negotiations with the Debtor and JP Morgan Chase Bank.

**B.      Generally:**

The purpose of this Disclosure Statement is to set forth information (i) concerning the Plan and any alternatives to the Plan, including the manner in which the Plan will be implemented, (ii)

---

[1]  All capitalized terms not specifically defined in this Disclosure Statement have the meaning ascribed to them in the Plan.

1

advising the Holders of Claims and Interests of the treatment of their respective Claims and Interests proposed under the Plan, (iii) advising the Holders of Claims and Interests of their respective rights under the Plan, and (iv) assisting the Holders of Claims in making informed judgments regarding whether to accept or reject the Plan.   The information in this Disclosure Statement may bear on your decision to vote to accept or reject the Plan.  As such, you are urged to read the Disclosure Statement and the Plan carefully and to consult your lawyer and other professional advisors in connection therewith.  The contents of the Disclosure Statement should not be construed as legal, business or tax advice from Plan Proponent or any of its professionals.

The information contained in this Disclosure Statement (including the Exhibits hereto) concerning the financial condition of the Debtor is based upon financial and other information provided by the Debtor to HSBC Bank, and the financial analysts at Zucker Forensics, Inc. retained by HSBC Bank in this Chapter 11 Case to analyze and advise on the Debtor's financial affairs (the "Financial Advisors").   The information in this Disclosure Statement has been obtained from the Debtor, his books and records and pleadings and other filings with the Bankruptcy Court, including without limitation, proofs of claims filed by creditors and the periodic financial reports filed by the Debtor during this Chapter 11 Case including those amended by the Financial Advisor (the "Periodic Operating Reports").  The Plan Proponent is not aware of any material misstatements or omissions in this Disclosure Statement.   Any representations made to secure the acceptance or rejection of the Plan which are other than as contained in this Disclosure Statement have not been approved by the Bankruptcy Court.  No representations concerning the financial condition of the Debtor or any aspect of the Plan are authorized by Plan Proponent except as set forth in this Disclosure Statement.   If and to the extent that any such representations have been made to any creditor or party in interest, then such

2

representations should be reported to counsel to Plan Proponent or to the Office of the United States Trustee.  Any such representations or inducements made to secure your acceptance or rejection of the Plan which are other than as set forth herein should not be relied upon by you in deciding whether to accept or reject the Plan.

This Disclosure Statement and Plan are propounded pursuant to Sections 1125 and 1129 of Title 11 of the United States Code (the "Bankruptcy Code"), and submitted to all known Creditors and holders of Claims and Interests against the Debtor for the purpose of disclosing the information that is material and necessary for Claimants to make an informed decision in exercising their right to vote on and understand the distribution scheme and proposed reorganization of the Debtor pursuant to the proposed Plan.   Reorganization pursuant to Chapter 11 of the Bankruptcy Code depends upon the receipt of a sufficient number of votes in favor of reorganization.   Your vote, therefore, is important.  *Your rights may be affected by the treatment of your claim or interest under the Plan.  Therefore, you should carefully read this Disclosure Statement and Plan, and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.*

You are urged to study the Plan in full and to consult with your counsel about the Plan and its effect, including possible tax consequences, upon your legal rights.  Please read this Disclosure Statement carefully before voting on the Plan.

*CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, OR OTHER ADVISORS.*

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**C.**    **Definitions:**

 **1.1.**    <u>**Administrative Claims**</u> - shall mean (i) Claims unpaid on the Effective Date, arising out of operation of the Debtor's affairs during this case and which are scheduled for payment in the ordinary course of the ongoing operations of the Debtor, or (ii) Claims of Professionals employed by the Debtor for fees and expenses which have not yet been approved by the Court or which are scheduled for payment upon Court approval.

 **1.2.**    <u>**Allowed Administrative Expense Claim**</u> - shall mean an Allowed Claim for which a Claimant asserts, and is determined to be entitled to, priority pursuant to Sections 503 and 507(a)(1) and (a)(2) of the Bankruptcy Code, other than Administrative Claims.

 **1.3.**    <u>**Allowed Claim**</u> - shall mean a Claim against the Debtor that (i) is allowed by a Final Order, (ii) is scheduled as liquidated, undisputed and non-contingent by the Debtor in his Schedules of Assets and Liabilities filed with the Bankruptcy Court, as they may be amended or supplemented (collectively, the "<u>Schedules</u>") or (iii) is timely filed with the Clerk of the Bankruptcy Court and no objection has been made to the allowance thereof within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim.

 **1.4.**    <u>**Allowed Priority Tax Claim**</u> - shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

 **1.5.**    <u>**Allowed Secured Claim**</u> - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor have an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under

4

Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property serving as collateral or to the extent of the amount subject to such setoff as the case may be.

    **1.6.**    <u>**Allowed Unsecured Claim**</u> - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court.

    **1.7.**    <u>**Anniversary Date**</u> - shall mean the date corresponding to the Confirmation Date, of the Plan Proponent's Plan.

    **1.8.**    <u>**Anniversary Month**</u> - shall mean the month corresponding to the month in which the Confirmation Date falls continuing in each subsequent year.

    **1.9.**    <u>**Bankruptcy Code**</u> - shall mean the United States Bankruptcy Code, 11 U. S. C. § 101 et. seq. and all amendments thereto.

    **1.10.**    <u>**Bankruptcy Court or Court**</u> - shall mean the United States Bankruptcy Court for the Southern District of Florida, in which the Proceedings were filed or such other court as may hereafter have jurisdiction of and act with respect to the Proceedings.

    **1.11.**    <u>**Bankruptcy Rules**</u> - shall mean the Federal Rules of Bankruptcy Procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**1.12.** **Claims Bar Date** - shall mean June 12, 2013, which is the date set by the Bankruptcy Court as the last day for filing Proofs of Claim against the Debtor.

**1.13.** **Claims Summary** – shall mean the analysis of the Proofs of Claim filed in this case prepared the Financial Advisors and attached as **Exhibit "C"** to this Disclosure Statement.

**1.14.** **Causes of Action** - shall be used in its broadest sense and shall include, but not limited to, all causes of action of the Debtor and all causes of action which a Trustee would have if the proceedings were converted on the Confirmation Date to a proceeding under Chapter 7 of the Code and a Trustee were appointed.   Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under applicable federal or state common law, whether or not they are the subject of presently pending litigation and whether they arise before or after the Confirmation Date, as well as rights belonging to the Debtor pursuant to Sections 506, 510, 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

**1.15.** **Claim** - shall mean any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

**1.16.** **Claimant** - shall mean the holder of a Claim.

**1.17.** **Class** - shall mean any group of substantially similar Claims as classified in Articles 3 and 4 of the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

**1.18.** **Confirmation** - shall mean the entry of an Order of the Bankruptcy Court confirming this Plan.

6

**1.19.    Confirmation Date** - shall mean the date upon which the Confirmation Order is entered by the Court after a hearing conducted pursuant to Section 1128 of the Bankruptcy Code.

**1.20.    Confirmation Order** - shall mean the order of the Bankruptcy Court confirming the Plan.

**1.21.    Creditor** - shall have the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.22.    Debtor** - shall mean Jeffrey M. Siskind.

**1.23.    Disputed Claim** - shall mean any Claim which is scheduled as disputed or as to which an objection has been filed but has not been resolved by Order of the Bankruptcy Court prior to the Effective Date.

**1.24.    Effective Date** - will occur fifteen (15) days from the date of the entry of the Confirmation Order.

**1.25.    Estate** - shall mean the estate created by § 541 of the Bankruptcy Code upon Siskind's filing of the Chapter 11 Petition with the Bankruptcy Court in this Proceeding.

**1.26.    Final Order** - shall mean an Order or judgment that has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and no appeal or petition for certiorari review or rehearing is pending, or (ii) if appeal, review, reargument, rehearing or certiorari of the Order has been sought, the Order has been affirmed or the request for review, reargument, rehearing or certiorari has been denied and the time to seek a further appeal, review, reargument, rehearing or certiorari has expired, as a result of which such Order shall have become final and nonappealable in accordance with applicable law.

7

**1.27.**    **Financial Advisor** – shall mean the professionals at Zucker Forensics, Inc. retained by HSBC Bank in this Chapter 11 Case to analyze and advise on the Debtor's financial affairs.

**1.28.**    **Impaired Class** - shall have the meaning set forth in 11 U.S.C. § 1124.  A Class is impaired if the legal, equitable and contractual rights to which the Claim is entitled are altered.

**1.29.**    **Law Office** – shall mean the Law Office of Jeffrey M. Siskind a/k/a Siskind Legal Services, LLC, a/k/a Jeffrey M. Siskind Law Office.

**1.30.**    **Lien** - shall mean any charge against or interest in property to secure payment of an Allowed Claim and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in the Bankruptcy Code or in any applicable state or federal law.

**1.31.**    **Net Disposable Income** - shall have the meaning ascribed to the term in 11 U. S. C §1325(b)(2).

**1.32.**    **Order** - shall mean an Order or judgment of the Bankruptcy Court as entered on the docket.

**1.33.**    **Petition** - shall mean the Debtor's Chapter 11 Bankruptcy Petition filed on the Petition Date.

**1.34.**    **Petition Date** - shall mean February 11, 2013.

**1.35.**    **Plan** - shall mean the Plan of Reorganization as it may be further amended or modified, and including all addenda, exhibits, schedules or other attachments thereto.

**1.36.**    **Plan Fund** – shall mean such sums that the Debtor will contribute for payment of Allowed Claims for a period of five (5) years from the Debtor's Net Disposable Income.

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**1.37.**   **Plan Period** - shall mean the period of time required to make the disbursements contemplated pursuant to the Plan.

**1.38.**   **Plan Payment** - shall mean disbursements contemplated in the Plan.

**1.39.**   **Pro Rata** - shall mean the proportion an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class, except as otherwise specified herein.

**1.40.**   **Proceeding or Proceedings** - shall mean the instant chapter 11 case of the Debtor currently pending in the Bankruptcy Court.

**1.41.**   **Professionals** - shall mean persons or entities retained or to be compensated pursuant to sections 326, 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code.

**1.42.**   **Plan Proponent** - shall mean HSBC Bank.

**1.43.**   **Reorganized Debtor** - shall mean the Debtor, Jeffrey M. Siskind, in his restructured and reorganized form as of and after the Effective Date.

**1.44.**   **Scheduled** - shall mean as set forth in the Schedules of Assets and Liabilities.

**1.45.**   **Schedules of Assets and Liabilities** - shall mean the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court, as the same have been or may be amended from time to time prior to the Effective Date.

**1.46.**   **Siskind** – shall mean the Debtor, Jeffrey M. Siskind.

**1.47.**   **U.S. Trustee** – shall mean the United States Trustee for the Southern District of Florida.

**D**.   **Purpose of this Document:**

This Disclosure Statement describes:

a.      A brief explanation of these Chapter 11 cases and the confirmation process;

9

b.      The Debtor and significant events during their bankruptcy case;

c.      How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interests if the Plan is confirmed);

d.      Who can vote on or object to the Plan;

e.      What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

f.      Why the Plan Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in a liquidation scenario; and

g.      The effect of confirmation of the Plan.

## ARTICLE II.
## OVERVIEW OF CHAPTER 11

**A.      Brief Explanation of Chapter 11:**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to Chapter 11, a debtor is authorized to reorganize or liquidate its business for its benefit and for the benefit of Creditors and Equity Interest Holders.  Upon the filing of a petition for relief under Chapter 11, certain types of actions by Creditors and Claimants attempting to collect on pre-petition Claims or to foreclose upon any of the Debtor's property are automatically stayed during the pendency of the Chapter 11 case.

In this case, the Debtor has continued in possession of his property and the management of his affairs.  Pursuant to Section 1107(a) of the Bankruptcy Code, therefore, the Debtor is vested with substantially the same powers as a trustee under the Bankruptcy Code.

**B.      Voting on the Plan:**

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization proceeding.  However, liquidation of debtor's assets is also permitted under Chapter 11.  The Plan is the vehicle through which Claims of the Debtor's Creditors are satisfied.

10

Each Creditor entitled to vote on either Plan may cast its vote for or against that Plan by completing, dating, and signing the Ballot Form, which shall accompany the Plan.   The Bankruptcy Court will, by separate Order, order that Ballots and Objections to Confirmation of the Plan, must be received at the offices of the Plan Proponent's counsel, Jacqueline Calderin, Esq., Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, Florida 33131 and the Office of the United States Trustee, Attention: Heidi Feinman, Region 21, 51 SW First Avenue, Room 1204, Miami, Florida 33130, no later than 5:00 p. m. on the date set forth in the Ballot and Order that shall accompany this Disclosure Statement or be provided by separate mailing.

This Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept the Plan.   **UNDER THE BANKRUPTCY CODE, YOUR VOTE FOR ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNLESS YOU RECEIVE A COPY OF THIS DISCLOSURE STATEMENT PRIOR TO OR CONTEMPORANEOUS WITH SUCH SOLICITATION.   THE SOLICITATION OF VOTES ON THE PLAN IS GOVERNED BY THE PROVISIONS OF SECTION 1125(b) OF THE BANKRUPTCY CODE, THE VIOLATION OF WHICH MAY RESULT IN SANCTIONS BY THE COURT, INCLUDING, BUT NOT LIMITED TO, DISALLOWANCE OF THE SOLICITED VOTE, AND LOSS OF THE "SAFE HARBOR" PROVISIONS OF SECTION 1125(e) OF THE BANKRUPTCY CODE.**

Only the votes of Creditors in the Classes that are impaired by the relevant Plan will be counted to determine if that Plan is accepted by Creditors.   Therefore, Classes 3, 4, 5, 6, and 7 of the Plan Proponent's Plan will have their votes counted.   Votes on the Plan will only be counted for those Claims for which a proof of Claim was filed before the applicable Bar Date, if any,

11

providing such Claim has not been disallowed or suspended prior to the computation of the vote. **The Ballot Form does not constitute a proof of Claim**.

C.    **The Confirmation Hearing:**

The Bankruptcy Court will schedule a hearing on the Confirmation of the Plan to determine if each Plan has been accepted by the requisite number of Creditors and whether the other requirements necessary to Confirmation have been satisfied.  The date on which the Confirmation hearing will be conducted will be set forth in the Bankruptcy Court's Order setting the hearing on Confirmation of the Plan, which will be provided either with the Plan or in a separate mailing.

D.    **Confirmation:**

At the Confirmation hearing, the Bankruptcy Court will determine, among other things, whether each Plan has been accepted by each Impaired Class of Creditors.  Under Section 1126 of the Bankruptcy Code, an Impaired Class is deemed to have accepted the Plan if at least two-thirds in amount and more than one-half in number of Allowed Claims in such Class voting to accept or reject the relevant Plan have voted in favor of acceptance.

There are two methods by which the Plan can be confirmed: (i) the "acceptance" method, in which all Impaired Classes have voted to accept the Plan as described above; and (ii) the "cram-down" method, in which the Plan are not accepted by one or more of the Impaired Classes, provided the Bankruptcy Court finds that the Plan do not discriminate unfairly and are fair and equitable to such Class or Classes.  For a plan to be confirmed under the "cram-down" method, it must be accepted by at least one Class of Claims or Interests that is Impaired by the plan.  The Plan Proponent may choose to rely upon the "cram-down" method to seek Confirmation of the Plan, if it is not confirmed by way of the "acceptance" method.

12

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan notwithstanding its rejection by one or more Impaired Class if the Bankruptcy Court finds that the plan is fair and equitable with respect to each Impaired Class that does not accept the plan.  With respect to Classes of Secured Creditors, the fair and equitable test requires that a Secured Creditor (i) retain its lien or liens and receive cash payments having a present value equal to its Allowed Secured Claim; (ii) receive the proceeds from the sale of its collateral, or (iii) realize the indubitable equivalent of its Claim.  With respect to a Class of Unsecured Claims, the fair and equitable test requires that if each Claimant in such Class does not receive property having a present value equal to the amount of such Claimant's Allowed Claim, no junior class can receive any property on account of such junior Claim or Interest.  If the Bankruptcy Court orders Confirmation of the Plan, then pursuant to Section 1141(d)(1)(A), the Debtor is immediately discharged from all pre-Confirmation debts except as is provided in the Plan. However, pursuant to Section 1141(d)(5)(A) of the Bankruptcy Code, the Debtor is discharged from all pre-Confirmation debts except as is provided in the Plan, upon completion of all payments required under the Plan.   Notwithstanding the foregoing, pursuant to Section 1141(d)(5)(B) of the Bankruptcy Code, the Debtor may reserve the right, upon notice and a hearing, to seek an earlier discharge in the event that the Debtor actually distributes to Allowed Claimholders the value, as of the Effective Date, of property under the Plan that is greater than the amount that would have been paid on such claims if the Debtor's bankruptcy estate had been liquidated under Chapter 7 of the Bankruptcy Code.  Confirmation makes the Plan binding on the Debtor, all Creditors, Interest Holders, and other parties in interest regardless of whether they voted to accept or reject the Plan.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## ARTICLE III.
## BACKGROUND OF THE DEBTOR AND HIS BANKRUPTCY CASE

**A.    The Commencement of the Chapter 11 Bankruptcy Case**

On February 11, 2013 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtor is a Florida Bar licensed attorney practicing in Palm Beach County, Florida. He is employed by and is the sole shareholder of the Law Office Jeffrey M. Siskind a/k/a Siskind Legal Services, LLC, a/k/a Jeffrey M. Siskind Law Office (collectively, the "Law Office").

**B.    Claims in Jeffrey Siskind's Bankruptcy Case**

**1.    Unsecured Claims**

According to the Claims Summary and the Debtor's bankruptcy schedules, approximately $6,669,455.98 in unsecured claims[2] were scheduled in the case or asserted through the filing of proofs of claim. To the extent that a creditor in the Debtor's case filed a Proof of Claim that was also scheduled by the Debtor, the filed Proof of Claim would supersede the scheduled Claim, subject to alternative resolutions obtained in the Claims objection process. The Plan Proponent does not waive any objections to or concede that any of these Claims are or will be allowed.

**2.    Bar Date for Filing Proofs of Claims.**

The Claims Bar Date in this Bankruptcy Case was June 12, 2013.

---

[2] (includes deficiencies on undersecured claims)

14

        **3.**       **Claims Objections Generally**.

There are some Creditors that the Debtor scheduled as disputed, contingent, or unliquidated. These Creditors have been so designated on the Debtor's Schedule F. To the extent that any of these disputed creditors filed a proof of claim, the Plan Proponent may object to these Claims.

## ARTICLE IV.
## DEADLINES FOR VOTING AND OBJECTING

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**A.**      **Final Hearing to Approve the Disclosure Statement and Plan.**

The hearing to finally approve this Disclosure Statement and confirm the Plan will be held at a date to be set by the Court at the United States Courthouse, 1515 N. Flagler Drive, Room 801-A, West Palm Beach, Florida 33401. If the Plan is rejected by one or more Impaired Classes of Claims and at least one Class accepts, the Bankruptcy Court may still confirm the Plan, or modifications thereof, under Bankruptcy Code Section 1129(b) (commonly referred to as a "cramdown") if it determines, among other things, that the Plan do not discriminate unfairly and are fair and equitable with respect to the rejecting Class or Classes of Claims impaired under the Plan. The Court will perform an independent analysis of each Plan in respect to its consideration of whether it can be confirmed by way of cramdown. The procedures and requirements for voting on the Plan(s) are described in more detail below.

**B.**      **Deadline for Voting to Accept or Reject the Plan:**

If you are entitled to vote to accept or reject the Plan(s), vote on the enclosed ballot and return the ballot in the enclosed envelope to:

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

**Clerk's Office – West Palm Beach Division**
United States Bankruptcy Court
Clerk of Court
1515 N.  Flagler Drive
8th Floor
West Palm Beach, Florida 33401

With a copy to:

Jacqueline Calderin, Esq.
Counsel to the Plan Proponent
Ehrenstein Charbonneau Calderin
501 Brickell Key Drive, Suite 300
Miami, Florida 33131

Your ballot must be received by _____ or it will not be counted.

**C.     Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan:**

Objections to this Disclosure Statement or to the Confirmation of the Plan must be filed with the Court at the Clerk's Office address provided above and served upon Debtor's counsel, Jacqueline Calderin, Esq. and the Office of the United States Trustee, Attention: Heidi Feinman, Region 21, 51 SW First Avenue, Room 1204, Miami, FL 33130.

**D.     Sources of Information:**

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, his businesses, and his management have been prepared from information furnished by the Debtor to the Financial Advisors.

Certain of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents.   While the Plan Proponent has made every effort to retain the meaning of such other documents or portions that have been summarized, the Plan Proponent urges that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves.   In the event of a discrepancy

16

between this Disclosure Statement and the actual terms of a document, the actual terms of the document shall govern, control, and apply.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement.

No statements concerning the Debtor, the value of his property, or the value of any benefit offered to the holder of a Claim or Interest under the Plan should be relied on other than as set forth in this Disclosure Statement.  In arriving at a decision, parties should not rely on any representation or inducement made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be immediately reported to counsel for the Plan Proponent.  If you want additional information about the Plan, you should contact Jacqueline Calderin, Esq., by phone at 305.722.2002, or by mail at Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, Florida 33131.

**E.     Disclaimer:**

**THE COURT HAS NOT YET APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT THEIR TERMS.  THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.  THE MATERIAL CONTAINED**

IN THIS DISCLOSURE STATEMENT IS INTENDED SOLELY FOR THE USE OF CLAIMHOLDERS IN EVALUATING THE PLAN AND VOTING TO ACCEPT OR REJECT THE PLAN. ACCORDINGLY, YOU SHOULD NOT RELY ON IT FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON, OR WHETHER TO OBJECT TO, THE PLAN. THERE CAN BE NO ABSOLUTE ASSURANCE THAT THE PLAN, AS CONTEMPLATED, WILL BE EFFECTUATED.

THE PLAN PROPONENT BELIEVES THAT THE PLAN AND THE PROPOSED TREATMENT OF CLAIMS THEREIN ARE IN THE BEST INTEREST OF CREDITORS, AND THEREFORE URGES YOU TO VOTE TO ACCEPT THE PLAN(S).

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), NOR HAS IT CONSIDERED THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL. THE APPLICABLE PLAN, OR THE PLAN IF YOU HOLD CLAIMS IN BOTH CASES, SHOULD BE REVIEWED CAREFULLY.

NEITHER THE FILING OF THE PLAN NOR ANY STATEMENT OR PROVISION CONTAINED IN THE PLAN OR IN THIS DISCLOSURE STATEMENT, NOR THE TAKING BY ANY PARTY IN INTEREST OF ANY ACTION WITH RESPECT TO THE PLAN, SHALL (i) BE OR BE DEEMED TO BE AN ADMISSION AGAINST INTEREST AND (ii) UNTIL THE EFFECTIVE DATE, BE OR BE DEEMED TO BE A WAIVER OF ANY RIGHTS THAT ANY PARTY IN INTEREST MAY HAVE (a) AGAINST ANY OTHER PARTY IN INTEREST OR (b) IN ANY OF THE ASSETS OF ANY OTHER PARTY IN INTEREST, AND, UNTIL THE EFFECTIVE DATE, ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED. IF EITHER PLAN IS NOT CONFIRMED OR FAILS TO BECOME EFFECTIVE, NEITHER THE PLAN, NOR THE DISCLOSURE STATEMENT, NOR ANY STATEMENT CONTAINED IN THE PLAN OR IN THE DISCLOSURE STATEMENT, MAY BE USED OR RELIED ON IN ANY MANNER IN ANY SUIT, ACTION, PROCEEDING OR CONTROVERSY INVOLVING THE DEBTOR, WITHIN THE DEBTOR' BANKRUPTCY CASES OR OUTSIDE THEREOF, EXCEPT WITH RESPECT TO CONFIRMATION OF THE PLAN.

**ARTICLE V. SUMMARY OF THE SISKIND PLAN AND DISTRIBUTION SCHEME**

A.      **Sources of Plan Funding.**

The Plan shall be funded from the Debtor's Net Disposable Income generated from the

projected revenues of the Law Office and the Debtor's other business entities over a 60 month

18

period.  The Plan Proponent projects that the Debtor's Net Disposable Income to equal the sum of $417,018.00 over the five years.  By committing the value of his Net Disposable Income, the Plan Fund shall provide to Allowed Class 7 Claimholders an amount greater than the liquidation value of the Debtor's bankruptcy estate at Confirmation.

The total value of non-exempt personal property (net of secured claims) listed on **Exhibit "B"** is $ 138,727.00.  Accordingly, there is significantly less value to be generated in the event of a liquidation.  Notwithstanding the foregoing, the Debtor will contribute the Plan Fund, which is composed of the value of the Debtor's Net Disposable Income over the next five years, to pay Allowed Claims.  The Debtor is generating the Plan Fund from the income received from the Law Office.  If the Debtor's interests in the Law Office were to be liquidated, this would result in no available distribution for creditors.   Furthermore, the Plan Fund represents value in an amount 300% greater than the value of the Debtor's non-exempt assets.  Class 7 Claimholders are, therefore, receiving a greater dividend than they would receive if the case was pending under Chapter 7.

B.        **Classification of Claims and Interests in the Plan.  :**

1.        **Manner of Classification of Claims and Interests and Unclassified Claims**.   As required by the Bankruptcy Code, the Plan classifies Claims in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.   The Plan states whether each Class of Claims is impaired or unimpaired.   The Plan provides the treatment of each Class will receive under the Plan.   In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not set forth in Classes. The Allowed Claims against the Debtor's Estate are set forth and classified as follows:

19

a.    **Administrative Expense Claims**: Administrative Expenses include claims for costs or expenses of administering the Case, which are allowed under Section 503(b) of the Bankruptcy Code and fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee that were incurred during the course of the case. The Bankruptcy Code requires that Allowed Administrative Expense Claims be paid on the Effective Date, unless a particular creditor agrees to different treatment.  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.  All Allowed Administrative Expense Claims in the Debtor's Case shall be paid in full on or before the Effective Date of the Debtor's Plan, or assumed by the Reorganized Debtor in the ordinary course of business.

b.    **Administrative Bar Date**:  Requests for payment of Administrative Claims must be filed and served pursuant to the procedures and deadlines set forth by this Court.  All requests for allowance and payment of Administrative Claims must be filed by the Administrative Claims Bar Date.  Any such Administrative Claim that is not filed within this deadline shall be forever barred and any holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such request by the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtor, the Reorganized Debtor or any of their property.

c.    **Professional Fee Claims**:  The Bankruptcy Court must approve all requests for the payment of professional compensation and expenses to the extent incurred on or before the Confirmation Date.  Each Professional requesting compensation or reimbursement of expenses in the Debtor's Case pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and

20

reimbursement of expenses on or before the deadline imposed by this Court.  Nothing herein shall prohibit each Professional from requesting interim compensation during the course of the Debtor's Case pending Confirmation of the Plan Proponent's Plan.  No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.  All fees, costs, and disbursements of Professionals shall be the subject matter of applications to the Court for allowance or award in the manner prescribed by the Code.

2.      **Classified Claims**

a.      **Class 1.  Allowed Claims of the Internal Revenue Service.**  The Internal Revenue Service (the "IRS") has filed a proof of claim evidencing total indebtedness of $78,997.94, of which $66,113.34 is priority in nature [POC #1].  On the Effective Date, Debtor will commence making payments in the amount of $1,333.00 over forty-five (45) months at an interest rate of two percent (2%) on the portion of the IRS debt that is priority in nature.  The IRS shall receive an allowed unsecured claim in the amount of $12,884.60 to be paid pro-rata with Class 7 unsecured creditors.  **Class 1 is not impaired and not entitled to vote.**

b.      **Class 2.  Allowed Claims of the Palm Beach County Tax Collector.**  The Palm Beach County Tax Collector's office filed a total of four proofs of claim in this case [POC# 2, 3, 4, 14] for indebtedness related to real and personal property taxes assessed on the Debtor's various ownership interests.  Proof of Claim #14, evidencing indebtedness assessed for 2013 real property taxes in the amount of $2,433. 31 related to the Debtor's ownership interests in a property located at 341 53rd Street, West Palm Beach, Florida (the "West Palm Beach Duplex"), reflects a due date on or before April 1, 2014.  Accordingly, Proof of Claim #14 will be paid in the ordinary course of business on or before April 1, 2014 or will be paid in full on

21

the Effective Date.  All other claims will be assumed and paid in the ordinary course of business.  To the extent that on the Effective Date any ad valorem taxes are due, those shall be paid monthly over a term of forty-five (45) months and bear an interest rate of eighteen percent (18%) per year.  **Class 2 is not impaired and not entitled to vote.**

          c.      **Class 3.  Allowed Secured Claim of U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association as Trustee as successor by merger to Lasalle Bank, National Association as Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5 Trust ("U.S. Bank").**  The claim of U.S. Bank is secured by the Debtor's primary residence and homestead real property located at 3465 Santa Barbara Drive, Wellington, Florida (the "Homestead").  U.S. Bank filed Proof of Claim #6, evidencing indebtedness in the amount of $2,917,315.45.  On the Effective Date, the Debtor will commence making payments to U.S. Bank pursuant to the terms of the loan set forth in Proof of Claim #6.  U.S. Bank will preserve a first priority lien on the Homestead.  Any arrearages will be added to the principal balance.  **Class 3 is impaired and entitled to vote.**

          d.      **Class 4.  Allowed Secured Claim of HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc. Asset Backed Certificates, Series 2007-1 ("HSBC Bank").**  The claim of HSBC Bank is secured by the Debtor's real property located at 401 Carysfort Road, Key Largo, Florida (the "Key Largo Property").  HSBC Bank filed Proof of Claim #12, evidencing indebtedness in the amount of $1,265,178.55.  On the Effective Date, the Debtor will commence making payments to HSBC Bank pursuant to the terms of the loan set forth in Proof of Claim #12.  HSBC Bank's first priority lien on the Key Largo Property will remain intact and in full force and effect until the obligations of the

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

underlying indebtedness is satisfied in full. Any arrearages will be added to the principal balance. **Class 4 is impaired and entitled to vote.**

        e.     **Class 5.  Allowed Claim of George and Jeri Maler.**  According to the Debtor's Schedules, the Debtor is indebted to George and Jeri Maler in the amount of $145,000.00, which debt is secured by interests in "motorized vehicles" and a portion of the value of the West Palm Beach Duplex owned jointly by the 341 53rd Trust and the Jeffrey M. Siskind Trust.  On the Effective Date, the Debtor will commence making payments to George and Jeri Maler pursuant to the terms of their loan agreement and George and Jeri Maler will preserve a first priority lien on the WPB Duplex and the "motorized vehicles".  Any arrearages on the loan will be added to the principal balance.  **Class 5 is impaired and entitled to vote.**

        f.     **Class 6.    Allowed Claim of Fiore at Gardens Condominium Association, Inc.**  The claim of Fiore at the Gardens Condominium Association, Inc. in the amount of $32,997.36 [POC #13] pursuant to the judgment entered against the Debtor on February 6, 2013 in the Circuit Court of the 15th Circuit in and for Palm Beach County, in the case styled *Fiore at the Gardens Condominium Association, Inc. vs. Jeffrey M. Siskind, et. al,* Case No.: 502011CA002717XXXMBAW, arises from unpaid condominium fees associated with the condominium unit owned by the 7102 Fiore Trust and Steven Wilkins located at 17103 Myrtlewood Circle West, Palm Beach Gardens, Florida.  Upon information and belief, 7102 Fiore Trust is an entity affiliated with the Debtor.  This claim will be paid over the course of forty-five (45) months, bearing an interest rate of four and a half percent (4.5%) percent per year.  **Class 6 is impaired and entitled to vote.**

        g.     **Class 7.  Allowed General Unsecured Creditors.**  Class 7 is comprised of all general unsecured claims as well as unsecured deficiency claims based on the values of

23

the real properties owned by the Debtor or the Debtor's business entities on the Effective Date. Holders of allowed unsecured deficiency claims include, without limitation the following: JP Morgan Chase [POC #9], OB Real Estate Holdings 1732, LLC [POC #7], Trisun Financial [POC #10], the Miriam Siskind Trust [POC #11], and Flagstar Bank FSB.  Class 7 shall receive periodic pro rata dividends from the Plan Fund for a period of five (5) years with the first payment due on the Effective Date of the Plan, and every year thereafter, as follows: (i) the Debtor will provide $34,336.00 during Year One, (ii) $63,814.00 during Year Two, (iii) $86,564. 00 during Year Three, (iv) $105.911. 00 during Year Four, and (v) $126,393. 00 during Year Five.  **Class 7 is impaired and entitled to vote.**

   **h. Class 8. Equity Interest of Jeffrey M. Siskind.**  Class 8 consists of Siskind's Equity Interests, which are retained under the Plan.  Class 8 is presumed to have accepted the Plan and is not entitled to vote.  **Class 8 is not impaired, and is not entitled to vote.**

**ARTICLE VI.**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

  **A. Claims and Interests** shall be treated as follows under this Plan**:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1<br>Internal Revenue Service | Not Impaired; Not Entitled to Vote | On the Effective Date, Debtor will commence making payments in the amount of $1,333. 00 over 45 months at an interest rate of 2% on the portion of the IRS debt that is priority in nature.  The IRS shall receive an allowed unsecured claim in the amount of $12,884.60 to be paid pro-rata with Class 8 unsecured creditors. |
| Class 2<br>Allowed Claims of Palm Beach County Tax Collector | Not Impaired; Not Entitled to Vote | Proof of Claim #14 will be paid in the ordinary course of business on or before April 1, 2014 or will be paid in full on the Effective Date.  All other claims will be assumed and paid in the ordinary course of business.  To the extent that on the Effective Date any ad valorem taxes are due those shall be paid monthly over a term of 45 months and bearing an interest rate of 18% per year. |

24

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

| Class | Impairment | Treatment |
|---|---|---|
| Class 3<br>Allowed Claim of<br>U. S. Bank | Impaired;<br>Entitled to Vote | On the Effective Date, Debtor will commence making payments to U. S. Bank pursuant to the terms of the loan set forth in Proof of Claim # 6. U. S. Bank will preserve a first priority lien on the Homestead real property. Any arrearages will be added to the principal balance. |
| Class 4<br>Allowed Claim of<br>HSBC Bank | Impaired; Entitled to Vote | On the Effective Date, the Debtor will commence making payments to HSBC Bank pursuant to the terms of the loan set forth in Proof of Claim #12. HSBC Bank will preserve a first priority lien on the Key Largo Property. Any arrearages will be added to the principal balance. |
| Class 5<br>Allowed Claim of<br>George and Jeri<br>Maler | Impaired;<br>Entitled to Vote | On the Effective Date, the Debtor will commence making payments to George and Jeri Maler pursuant to the terms of their loan agreement and George and Jeri Maler will preserve a first priority lien on the WPB Duplex and the "motorized vehicles". Any arrearages on the loan will be added to the principal balance. |
| Class 6<br>Fiore at Gardens<br>Condominium<br>Association, Inc. | Impaired;<br>Entitled to Vote | This claim will be paid over the course of 45 months, bearing an interest rate of four and a half (4.5%) percent per year. |
| Class 7<br>Allowed General<br>Unsecured Claims | Impaired;<br>Entitled to Vote | Pro rata payments for a period of five (5) years pursuant to the schedule set forth above. |
| Class 8<br>Equity Interests of<br>the Debtor | Unimpaired;<br>Presumed to<br>accept; Not<br>Entitled to Vote | The Equity Interests of Jeffrey Siskind are preserved under the Plan. |

# ARTICLE VII.
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND U. S. TRUSTEES FEES

**A.      Allowed Administrative Expense Claims**.  Each holder of an Administrative Expense Claim in this Case allowed under § 503 of the Code will be paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtor.  All Administrative Claims incurred in the ordinary course of the Debtor's affairs, including without limitation, income taxes, shall be assumed and paid by the Debtor in the ordinary course of business pursuant to customary terms and due dates.

25

**B.**    ***United States Trustee Fees.***    All fees required to be paid by 28 U. S. C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U. S. Trustee Fees owed on or before the Confirmation Date of the Plan Proponent's Plan will be paid by the Debtor on the Effective Date.

### ARTICLE VIII.
### PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

**A.**    **Ballots and Voting Deadline**.

The deadline for submitting Ballots for the acceptance or rejection of the Plan is _____:00 p. m., Eastern Standard Time (the "Voting Deadline").

All Claimholders (or their authorized representatives) entitled to vote must:

  a.  carefully review the Ballot and corresponding instructions,

  b.  execute the Ballot, and

  c.  return the Ballot to the address indicated on the Ballot so that it is actually received by the Voting Deadline.

**B.**    **Claimholders Entitled to Vote**.

Any Creditor in these Cases that holds a Claim that is not a Disputed Claim or an Unimpaired Claim is entitled to vote on the Plan for the Case in which they hold a Claim.  Under the Plan, a "Disputed Claim" means: (a) a Claim that is listed on the appropriate Debtor's Schedules that is not disputed, contingent or unliquidated, but as to which an objection has been filed, and such objection has not been withdrawn or denied by a Final Order; (b) a Claim that is listed on the appropriate Debtor's Schedules as disputed, contingent or unliquidated; or (c) a proof of claim or request for payment of an Administrative Claim that has been filed by the Bar

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

Date or has otherwise been deemed timely filed under applicable law.[3]  Returning the Ballot to Plan Proponent's Counsel does not constitute filing a Proof of Claim or Interest.

Any Holder of a Disputed Claim is not entitled to vote on the Plan, unless the Bankruptcy Court, on motion filed by such party, temporarily allows the Claim in a specific amount for the purpose of accepting or rejecting the relevant Plan.   Such motion must be heard and determined by the Bankruptcy Court before the Confirmation Hearing on the Plan.   A vote may be disregarded if the Bankruptcy Court determines that the Claimholders acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code.  Ballots must be filed in the Cases, which can be accomplished by sending completed Ballots to:

> **Clerk's Office – West Palm Beach Division**
> United States Bankruptcy Court
> Clerk of Court
> 1515 N. Flagler Drive.
> 8th Floor
> West Palm Beach, Florida 33401
>
> With a copy to:
>
> Jacqueline Calderin, Esq.
> Counsel to the Plan Proponent
> Ehrenstein Charbonneau Calderin
> 501 Brickell Key Drive, Suite 300
> Miami, Florida 33131
> T. 305.722.2002

Ballots sent to the Plan Proponent's Counsel do not constitute filing a proof of Claim or Interest.

Under Bankruptcy Code Section 1126(f), a class that is not impaired under a Chapter 11 plan, and each Holder of a Claim or Interest in such class, are conclusively presumed to have accepted the Chapter 11 plan.  Under Bankruptcy Code Section 1126(g), a class is deemed not to

---

[3] Administrative Claims are not impaired and therefore not entitled to vote.

27

have accepted a Chapter 11 plan if the Holders of Claims or Interests in such class do not receive or retain any property under the Chapter 11 Plan on account of such Claims or Interests.  Holders of Claims or Interests that are unimpaired under the Plan, or that are not entitled to receive or retain any property under the Plan, are not entitled to vote to accept or reject the Plan. Accordingly, the Debtor will not be soliciting votes from such Claimholders or Interest holders.

C.      *Bar Date for Filing Proofs Claim*.

1.      **Pre-Petition**:  The Bankruptcy Court established June 12, 2013 as the deadline for filing proofs of claims in this Case (the "Bar Date").  Any prepetition claim must be filed prior to the Bar Date with the following exceptions: (i) in the event that the Debtor amends his Schedule of Assets and Liabilities, the Debtor must give notice of such amendment to the Creditor affected thereby, and the affected Creditor shall have until the later of the applicable Bar Date or thirty (30) days from the date on which notice of such amendment was given to file a proof of Claim; (ii) in the event that a Claim arises with respect to either Debtor's rejection of an executory contract or unexpired lease, any Creditor shall have until the later of applicable Bar Date or thirty (30) days after the entry of any Order authorizing the rejection of the executory contract or unexpired lease to file a proof of Claim

D.      *Definition of Impairment*.  Under Bankruptcy Code section 1124, a class of Claims or Interests is impaired under a plan of reorganization unless, with respect to each Claim or Interests of such class, the Plan:

a.      leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

b.      notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of such claim or interest after the occurrence of a default:

28

    i)      cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Bankruptcy Code section 365(b)(2);

    ii)     reinstates the maturity of such claim or interest as it existed before the default;

    iii)    compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

    iv)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**E.**    ***Disallowed Claims***.  All Claims held by persons against whom a Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code, shall be deemed "Disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed Disallowed pursuant to this Section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the respective Debtor from such party have been paid.

**F.**    ***Acceptance by Class of Claimholders***.  A Class of Claimholders is deemed to have accepted the Plan, if that Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class.

**G.**    ***Cramdown***.   In the event that any impaired Class of Claimholders with claims against the Debtor fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code (the "Cramdown Provisions").  For purposes of seeking Confirmation of the Plan under the Cramdown Provisions, the Debtor reserve the right to modify or vary the

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

terms of the Plan or the treatment of the Claims of those Classes that rejected the relevant Plan so as to comply with the requirements of the Cramdown Provisions.

### H.     *Classes Impaired Under the Siskind Plan*

The Classes impaired under the Siskind Plan are Classes 3, 4, 5, 6 and 7.  These classes are entitled to vote and will have their votes counted for purposes of confirmation of the Plan Proponent's Plan.

### I.     *Vote Required for Class Acceptance.*

The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the plan; that is, acceptance takes place only if creditors holding claims constituting at least two-thirds in dollar amount of the total amount of claims and more than one-half in number of the creditors actually voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the allowed interests of that class.

### J.     *Information on Voting and Ballots.*

#### 1.     *Transmission of Ballots to Claimholders*

Ballots are being forwarded to Claimholders in Classes 3, 4, 5, 6 and 7.  Additionally, in accordance with the Bankruptcy Rules, a copy of the order approving this Disclosure Statement and the Solicitation Procedures Order will also be included with the Ballot.  Those Claimholders whose Claims are unimpaired under the Plan are conclusively presumed to have accepted the Plan under Bankruptcy Code Section 1126(f), and therefore need not vote concerning the Plan.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

Under Bankruptcy Code Section 1126(g), Claimholders who do not either receive or retain any property under the Plan are deemed to have rejected the Plan.

2.      *Ballot Tabulation Procedures*.

Pursuant to the Solicitation Procedures Order, the amount and classification of a Claim and the procedures that will be used to tabulate acceptances and rejections of the Plan shall be exclusively as follows: any timely received ballot that contains sufficient information to permit the identification of the Claimant and is cast as an acceptance or rejection, as the case may be, of the relevant Plan, subject to the following exceptions and clarifications:

i.      If a Claim is deemed Allowed in accordance with the Plan or Order in this or any affiliated case, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

ii.     If a Claim has been established or otherwise allowed for voting purposes by Order of the Bankruptcy Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution;

iii.    If a Claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable deadline to file proofs of Claim or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, the Claim will be disallowed in its entirety for voting purposes;

iv.     For all persons or entities who timely filed a proof of Claim reflecting a Claim or portion of a Claim that is contingent or if a Claim objection is pending, the Claim shall be disallowed in its entirety for voting purposes, subject to the right of such Holder to file a motion for temporary allowance;

v.      If a ballot is properly completed, executed and timely filed, but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan, the Ballot will not be counted;

vi.     If a proof of Claim has been timely filed and has not been objected to before the Confirmation Hearing, the voted amount of that Claim shall be the liquidated amount specified in the proof of Claim; and

31

vii.    If no proof of claim has been timely filed, the voted amount of a Claim shall be equal to the amount listed for the particular Claim in the Schedules, as and if amended, to the extent such Claim is not listed as contingent, unliquidated, or disputed, and the Claim shall be placed in the appropriate Class based on the Debtor' records and consistent with the Schedules.

Ballots that fall within the following categories will not be counted or considered for any purpose in determining whether the Plan have been accepted or rejected, except as specified:

i.    Any Ballot received after the Voting Deadline unless the Debtor or Bankruptcy Court shall have granted an extension in writing of the Voting Deadline with respect to such Ballot;

ii.    Any Ballot that is illegible or contains insufficient information to permit the identification of the Claimant;

iii.    Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan as of the Voting Record Date;

iv.    Any duplicate Ballot;

v.    Any Ballot that is unsigned, or signed by someone other than the Holder of the Claim (or the claimholders authorized representative); or

vi.    Any acceptance or rejection submitted on something other than the Ballot form provided by the Debtor and approved pursuant to the Solicitation Procedures Order.

The Plan Proponent believes that the foregoing proposed procedures provide for a fair and equitable voting process.  As mentioned above, if any Claimant seeks to challenge the allowance of its Claim for voting purposes, such creditor must serve on the Debtor and file with the Court, a motion requesting the temporary allowance of such Claim in a different amount for purposes of voting to accept or reject the relevant Plan no later than the date of the First hearing to approve the Disclosure Statement (the "Motion for Temporary Allowance Deadline").  The Ballot of any Claimant filing such a motion shall not be counted unless temporarily allowed by the Bankruptcy Court for voting purposes, after notice and a hearing.

32

Whenever two or more ballots are cast voting the same Claim prior to the Voting Deadline, the latest dated Ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots, provided, however, that where an ambiguity exists as to which Ballot reflects the voter's intent, the Clerk of the Bankruptcy Court reserves the right to contact the Claimant and calculate the vote according to such voter's written instructions.  This procedure is without prejudice to the Debtor' right to object to the validity of the second Ballot on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes.  This procedure of counting the last Ballot is consistent with practice under various state and federal corporate and securities laws.  Furthermore, the Debtor propose that in their sole discretion they can agree to allow a Claimant to change its vote after the Voting Deadline without further order of the Bankruptcy Court.

Claim splitting is not permitted and Claimants who vote must vote all of their Claims within a particular class to either accept or reject the relevant Plan.

### ARTICLE IX.
### CONFIRMATION OF PLAN

A.      *Solicitation of Acceptances.*

The Plan Proponent is soliciting your vote.

**NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED BY THE DEBTOR, OR PLAN PROPONENT, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND IN ANY SOLICITATION MATERIALS APPROVED BY THE BANKRUPTCY COURT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE PLAN PROPONENT'S COUNSEL FOR APPROPRIATE ACTION.**

**THIS IS A SOLICITATION SOLELY BY THE PLAN PROPONENT, AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY,**

33

**ACCOUNTANT, OR OTHER PROFESSIONAL FOR THE DEBTOR. THE REPRESENTATIONS, IF ANY, MADE IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR AND NOT OF SUCH SHAREHOLDERS, ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.**

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the claimant has received a copy of a disclosure statement approved by the Bankruptcy Court prior to, or concurrently with, such solicitation. This solicitation of votes on the Plan is governed by Bankruptcy Code Section 1125(b). Violation of Bankruptcy Code Section 1125(b) may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

###### B.   *Requirements for Confirmation of the Plan.*

At the confirmation hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code Section 1129 have been satisfied in respect to each Plan, in which event the Bankruptcy Court shall enter orders confirming the Plan. For either Plan to be confirmed, Bankruptcy Code Section 1129 requires that:

(a)   The Plan complies with the applicable provisions of the Bankruptcy Code;

(b)   The Debtor has complied with the applicable provisions of the Bankruptcy Code;

(c)   The Plan has been proposed in good faith and not by any means forbidden by law;

(d)   Any payment or distribution made or promised by the Debtor or by a Person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

34

(e)     The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor, an affiliate of the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interest of Claimholders and Interestholders and with public policy; and the Debtor have disclosed the identity of any insider that will be employed or retained post-confirmation and the nature of any compensation for such insider;

(f)     Any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(g)     With respect to each impaired Class of Claims or Interests, either each holder of a Claim or Interest of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code. If Bankruptcy Code Section 1111(b)(2) applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor' interest in the property that secures that Claim;

(h)     Each Class of Claims or Interests has either accepted the Plan or is not impaired under the Plan;

(i)     Except to the extent that the holder of a particular Allowed Administrative Expense Claim, or Allowed Priority Wage Claim has agreed to a different treatment of its Claim, the Plan provides that such Claims shall be paid in full on the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, or as soon as practicable thereafter;

(j)     If a Class of Claims or Interests is impaired under the Plan, at least one such Class of Claims or Interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class; and,

(k)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

35

The Plan Proponent believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code for Confirmation and that the Plan was proposed in good faith. The Plan Proponent believes that it has complied, or will have complied, with all the requirements of the Bankruptcy Code governing confirmation of the Plan.

C.    *Acceptances Necessary to Confirm the Plan.*

Voting on the Plan(s) by each holder of a Claim (or its authorized representative) is important. Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim vote in favor of the relevant Plan in order for the Bankruptcy Court to confirm that Plan. Generally, to be confirmed under the acceptance provisions of Bankruptcy Code Section 1126(a), the plan must be accepted by each Class of Claims that is impaired under the plan by parties holding at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the plan. Even if all Classes of Claims accept a Plan, the Bankruptcy Court may nonetheless refuse to confirm that Plan.

D.    *Cramdown*.

In the event that any impaired Class of Claims does not accept one of the Plan, the Bankruptcy Court may still confirm that Plan at the request of the relevant Debtor if, as to each impaired Class that has not accepted the relevant Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A Chapter 11 plan does not discriminate unfairly within the meaning of the Bankruptcy Code receives more than it is legally entitled to receive for its claims or interests. "Fair and equitable" has different meanings for holders of secured and unsecured claims and interests. With respect to a secured claim, "fair and equitable" means either (i) the impaired secured creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claims with a present value as

36

of the Effective Date of the relevant Plan at least equal to the value of such creditor's interest in the property securing its liens; (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its Claim under the relevant Plan.

With respect to an unsecured claim, "fair and equitable" means either (i) each impaired creditor receives or retains property of a value equal to the amount of its Allowed Claim or (ii) the holders of claims or interests that are junior to the claims of the dissenting class will not receive any property under the relevant Plan.

With respect to Interests, "fair and equitable" means either (i) each impaired Interest receives or retains, on account of that Interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the Interest, or (ii) the holder of any Interest that is junior to the Interest of that Class will not receive or retain under the relevant Plan, on account of that junior Interest, any property.

The Plan Proponent believes that neither Plan discriminates unfairly and that the Plan is fair and equitable with respect to each impaired Class of Claims and Interests.  In the event that at least one Class of impaired Claims or Interests rejects or is deemed to have rejected either Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether that Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Interest.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

E.      *Execution of Ballots by Representatives.*

Federal Rule of Bankruptcy Procedure 3018(c) requires that an acceptance or rejection of a chapter 11 plan shall be in writing, identifying the plan accepted or rejected, and be signed by the creditor or equity security holder or an authorized agent.   The ballot approved by the Solicitation Procedure Order requires the identification of persons signing in a fiduciary or representative capacity.   To be counted, completed ballots signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity must indicate their capacity when signing.  At the Debtor' request, ballot signatories must submit proper evidence, satisfactory to the Debtor of his or her authority to so act.  Failure to indicate the capacity of the signatory to the ballot may result in the ballot being deemed invalid and not counted.

F.      *Waivers of Defects and Other Irregularities Regarding Ballots.*

Unless otherwise directed by the Bankruptcy Court, all questions concerning the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots will be determined by the Debtor in their sole discretion, whose determination will be final and binding.  The Plan Proponent reserves the right to reject any and all ballots not in proper form, the acceptance of which, in the opinion of the Plan Proponent or its counsel, would be unlawful. Any defects or irregularities in connection with deliveries of ballots must be cured within such time as the Bankruptcy Court determines.   Neither the Plan Proponent, the Clerk of the Bankruptcy Court, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots, nor will any of them incur any liability for failure to provide such notification; provided, however, that the Plan Proponent and/or Clerk of the Bankruptcy Court will indicate on the ballot summary the ballots, if any, that were not

38

counted, and will provide the original of such ballots with the original of the ballot summary at the Confirmation Hearing.  Unless otherwise directed by the Bankruptcy Court, delivery of such ballots will not be deemed to have been made until any irregularities have been cured or waived. Unless otherwise directed by the Bankruptcy Court, ballots previously furnished, and as to which any irregularities have not subsequently been cured or waived, will be invalidated.

G.    *Withdrawal of Ballots and Revocation.*

Except as otherwise directed by the Bankruptcy Court after notice and a hearing, any holder of a Claim (or its authorized representative) in an Impaired Class who has delivered a valid ballot for the acceptance or rejection of either Plan to the Clerk of the Bankruptcy Court may withdraw such ballot at any time before the Voting Deadline.

To be valid, a notice of withdrawal must:

(a)    Contain the description of the Claims to which it relates and the aggregate principal amount or number of shares represented by such Claims;

(b)    Be signed by the Creditor (or its authorized representative) in the same manner as the ballot; and

(c)    Be received by the Clerk of the Bankruptcy Court in a timely manner at the address specified in the ballot instructions for the submission of ballots with a copy to the Debtor' undersigned counsel.

The Plan Proponent expressly reserves the absolute right to contest the validity of any such withdrawals of ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of ballots that is not received in a timely manner by the Clerk of the Bankruptcy Court and Plan Proponent's counsel will not be effective to withdraw a previously furnished ballot.

Any creditor (or its authorized representative) who has previously submitted a properly completed ballot before the Voting Deadline may revoke such ballot and change its vote by

39

submitting before the Voting Deadline a subsequent, properly completed ballot for acceptance or rejection of the relevant Plan.  In addition, if a Creditor submits a valid notice of withdrawal prior to the Voting Deadline, such holder may submit a new ballot, and such ballot will be counted so long as it is received prior to the Voting Deadline and is otherwise submitted in accordance with the order approving the Disclosure Statement.

## ARTICLE X.
## EFFECTS OF CONFIRMATION OF PLAN AND DISCHARGE

Pursuant to 11 U.S.C. § 1141, upon the Confirmation of the Plan, all of the prepetition property of the Debtor shall vest in the Reorganized Debtor free and clear of all claims and interests of Creditors except as otherwise disclosed herein.  If the Bankruptcy Court orders Confirmation of the Plan, then pursuant to Section 1141(d)(1)(A), Siskind is immediately discharged from all pre-Confirmation debts except as is provided in the Plan.  Pursuant to Section 1141(d)(5)(A), the Debtor, however, will only be discharged from any debt that arose before Confirmation of the Plan (excluding for which alternative provision has been made under the Plan) upon completion of all payments required under the Plan.   Notwithstanding the foregoing, pursuant to Section 1141(d)(5)(B) of the Bankruptcy Code, the Debtor may reserve the right to seek, upon notice and a hearing, an earlier discharge in the event that he actually distributes to the Allowed Unsecured Creditors the value, as of the Effective Date, of property under the Plan that is greater than the amount that would have been paid on such claim if the Estate had been liquidated under Chapter 7 of the Bankruptcy Code.

## ARTICLE XI.
## POSSIBLE CAUSES OF ACTION AFTER CONFIRMATION

The Plan Proponent has reviewed the Debtor's books and records as presented by the Debtor and has determined that there are no potential causes of action to avoid transfers pursuant

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

to 11 U.S.C. §§ 544, 547, 548, and 549 ("<u>Avoidance Actions</u>").  **However, because all investigations and inquiries have not yet been completed, it is possible that there may be additional Causes of Action not mentioned herein and no party should assume that any release or discharge provision contained in the Plan, or the Confirmation Orders, will bar, or otherwise inhibit, the Plan Proponent from taking any action to prosecute or enforce such additional Causes of Action, for which the Debtor preserve the right to pursue.**  Under the circumstances, it is not feasible or in the best interests of the Debtor's Estate to allow the continuing investigation to delay Confirmation of the Plan.  The Plan Proponent is not aware of any Claim or Cause of Action accruing to the Debtor, other than those specifically set forth in this section.

Notwithstanding the foregoing, the Plan Proponent expressly reserve all Claims, Causes of Action, counter-claims, and defenses for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches will apply to such Claims, Causes of Action, counter-claims, or defenses upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order.  Any person or Governmental Unit to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods, or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer, or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not:  (a) such person or Governmental Unit has filed a proof of Claim against any of

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

Debtor in these Cases; (b) such person or Governmental Unit's proof of Claim has been objected to by the Debtor against which it was filed; (c) such person's or Governmental Unit's Claim was included in the Debtor' Schedules; or (d) such Person's or Governmental Unit's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated, or disputed, except any releases provided herein.

## ARTICLE XII.
## TAX IMPLICATIONS OF THE PLAN

The tax consequences of the implementation of the Plan to a specific Creditor will depend on a number of factors, including whether the Holder's Claim constitutes a "security" for federal income tax purposes, whether a Creditor has already taken a deduction of loss with respect to its Claim and the timing of any distributions under the relevant Plan. It is possible that certain Holders will recognize gain or income as a result of distributions under the Plan. There also may be state, local, or foreign tax considerations applicable to particular Holders of Claims, none of which are discussed herein. **Each holder of a Claim or any other party in interest in this case is strongly urged to consult with their tax advisor regarding the federal, state, and local income and other tax consequences that the implementation of these Plan may have on them.**

## ARTICLE XIII.
## LIQUIDATION ANALYSIS

A plan proponent must demonstrate as a condition of confirmation, that each impaired Class of Claimholders will receive as much as it would receive in a Chapter 7 proceeding, commonly known as the "best interests of creditors" test. A plan proponent must also demonstrate that the plan is "feasible," i.e., that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

Under Section 1129(a)(7) of the Bankruptcy Code, the Plan must provide that Claimholders receive as much or more under the Plan than they would receive in a Chapter 7 liquidation of the Estate.  The Plan Proponent asserts that all Claimholders will receive more under the Plan than they would in liquidation scenario.  Attached as **Exhibit "B"** is a liquidation analysis prepared by the Financial Advisor.

As is evident from comparing the value of the Assets with the Claims asserted against the Estate, Claimholders will receive more under the Plan than they would receive if the Estate was to be liquidated through Chapter 7.  The Plan Proponent submits the Debtor's personal and business cash flow projections, attached hereto as **Exhibit "D",** in order to: satisfy the best interest of creditors test set forth in 11 U. S. C. § 1129(a)(7),  further demonstrate the Debtor's ability to make the payments required under the Plan, evidence that the proposed payments under the Plan are feasible.

If this case were to be converted to Chapter 7, a trustee would be appointed to marshal and liquidate the non-exempt assets of the Debtor. A Trustee would, in all likelihood, retain counsel, which would add additional administrative expenses.  Substantial fees could be incurred in obtaining familiarity with Siskind's financial dealings already obtained by professionals retained by the Plan Proponent in connection with the Chapter 11 proceedings.  The Plan Proponent believes that upon liquidation, the Estate would not receive assets sufficient to exceed the proposed distributions under the Plan.  Accordingly, the Plan Proponent submits that the General Unsecured Creditors stand to gain more benefit from Confirmation of the Plan than they would in a Chapter 7 liquidation of the Estate.

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## MISCELLANEOUS

**A.      *Modification.***

The Plan Proponent reserves the right to revoke or withdraw the Plan in its sole discretion, at any time before the Confirmation Date, or, if for any reason the Plan cannot be consummated after the Confirmation Date, at any time up to and including the Effective Date.  If either Plan is revoked and withdrawn, then (a) nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the relevant Estate or to prejudice in any manner the rights of any person or entity in any further proceedings in the relevant Case or otherwise; and, (b) any provision of the Confirmation Order shall be null and void and all such rights of or against the relevant Estate shall exist as though that Plan had not been filed and no actions were taken to effectuate it.

The Plan Proponent, or creditors (with respect to post-confirmation modification only), may seek to modify the Plan, either pre- or post-confirmation in accordance with the Bankruptcy Code, or, if for any reason the Plan cannot be consummated after the Confirmation Date, at any time up to and including the Effective Date.

**B.      *Confirmation Order Controls.***

To the extent the Disclosure Statement is inconsistent with either Plan, the Plan shall control.  To the extent that the Plan, the Disclosure Statement, or any agreement entered into between or among the Debtor and any third party is inconsistent with the Confirmation Order, the Confirmation Order shall control.

**C.      *Effectuating Documents and Further Transactions*.**

The Plan Proponent and the Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases and other agreements, and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the

44

Plan.  The Plan Proponent's counsel shall have no continuing duties post-confirmation other than to make the distributions required on the Effective Date unless otherwise agreed to by the Reorganized Debtor and counsel.

### D.    *Substantial Consummation of the Plan.*

Pursuant to the terms of the Plan, the Plan Proponent believes that the Plan shall be deemed to be substantially consummated under 11 U.S.C. § 1101 on the Effective Date.

### E.    *Terms of the Plan are Binding.*

Pursuant to Section 1141 of the Bankruptcy Code, the Plan and all of their terms, when approved and confirmed by the Bankruptcy Court, shall be binding upon, including, without limitation, the Plan Proponent, the Debtor, the Debtor's Estate, all holders of Claims, Allowed or not, and their respective successors and assigns.

If, after the Confirmation Date, any term or provision of either Plan is determined to be unenforceable, the remaining terms and provisions of that Plan shall nonetheless continue in full force and effect.

### F.    *Injunction.*

The Confirmation Orders shall act as an injunction:

Against the filing, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor with respect to any property of the Debtor or any direct or indirect transferee of any property of the Debtor, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or success except as specifically authorized in the Plan;

Enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly

45

or indirectly, any judgment, award, decree or other Order against the Debtor, with respect to any property of the Debtor or any of the direct or indirect transferee of any property of the Debtor, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferees or successor except as specifically authorized in the Plan;

Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any liens or encumbrances against the Debtor, with respect to any property of the Debtor or any direct or indirect transferee of any property of the Debtor, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or successor except as specifically authorized in the Plan;

Setting-off, seeking reimbursement or contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing except as specifically authorized in the Plan; or

Proceeding in any manner and any place with regard to liquidating any Claim in any forum other than the United States Bankruptcy Court for the Southern District of Florida, or, if that Court does not have jurisdiction thereon, in the United States District Court for the Southern District of Florida, or in such forum deemed appropriate by the Debtor.

G.    *Taxes*.

The issuance, transfer or exchange of a security or the making or delivery of an instrument of transfer under the Plan, if any, including the execution or recording of any mortgage modification, security agreement and related note, shall be deemed to be free of any tax under any law imposing a stamp or similar tax pursuant to Section 1146(c) of the Bankruptcy Code.

46

## ARTICLE XIV.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction of these proceedings after the Confirmation Date of the Plan until the entry of the final decree pursuant to Bankruptcy Rule 3022 for the following purposes:

1. To enable the Debtor and the Reorganized Debtor to consummate the their respective Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

2. To enable the Debtor and the Reorganized Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Orders;

3. To determine all controversies relating to or concerning the classification, subordination, allowance, valuation, or satisfaction of Claims;

4. To liquidate or estimate for purposes of allowance all contested, contingent, or unliquidated Claims;

5. To determine the validity, extent, and priority of all liens, if any, against property of the Siskind Estate;

6. To determine all assertions or an ownership interest in, the value of, or title to, any property of the Siskind Estate;

7. To determine all applications for compensation and reimbursement and objections to Administrative Claims;

8. To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or causes of action asserted by the Debtor;

47

9.      Without limiting the generality of the preceding paragraph, to determine any avoidance action brought by the Debtor or the Plan Proponent;

10.      To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

11.      To enforce all agreements assumed in these Cases, if any, and to recover all property of the Estates, wherever located;

12.      To determine any tax liability of the Estates in connection with the Plan, actions taken, distributions, or transfers made thereunder;

13.      To enforce any and all injunctions created pursuant to the terms of the Plan;

14.      To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Orders;

15.      To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

16.      To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

17.      To issue a Discharge pursuant to Section 1141 of the Bankruptcy Code; and

18.      To enter a Final Decree pursuant to Bankruptcy Rule 3022.

## ARTICLE XV.
## RECOMMENDATION OF CONFIRMATION

The Plan Proponent believes that Confirmation of the Plan is in the best interests of the Estate and the creditors thereof because confirmation of the Plan will enable Claimholders to receive higher distributions under the Plan than they would in the event that the case were converted to Chapter 7.  Therefore, the Plan Proponent urges all holders of impaired claims to cast a ballot voting in favor of the Plan on or before _____, 2014.

48

Submitted by:

By:    _____

**Jacqueline Calderin, Esq.**
**Fl. Bar No. : 134414**
**Ehrenstein Charbonneau Calderin**
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002        F. 305.722.2001
E-Mail: jc@ecclegal.com
www.ecclegal.com
*Counsel for the Plan Proponent*

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

# Exhibit "A"

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION
### www.flsb.uscourts.gov

| | |
|---|---|
| In re: | |
| JEFFREY M. SISKIND | Case No.: 13-13096-BKC-PGH |
| _____Debtor._____ °/ | Chapter 11 |

## HSBC BANK USA, NATIONAL ASSOCIATION'S PLAN OF REORGANIZATION FOR JEFFREY M. SISKIND

**Submitted on May 1, 2014 by:**

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive, Suite 300**
**Miami, Florida  33131**
**T. 305.722.2002       F. 305.722.2001**
**Jacqueline Calderin- Fla. Bar No. 134414**
**jc@ecclegal.com**
*Attorneys for Plan Proponent, HSBC Bank, N.A.*

## TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS** .................................................................**1**

    **1.1.**    **Administrative Claims** .........................................................**1**

    **1.2.**    **Allowed Administrative Expense Claim** .............................**1**

    **1.3.**    **Allowed Claim** ....................................................................**1**

    **1.4.**    **Allowed Priority Tax Claim** ...............................................**2**

    **1.5.**    **Allowed Secured Claim** ......................................................**2**

    **1.6.**    **Allowed Unsecured Claim** ..................................................**2**

    **1.7.**    **Anniversary Date** ...............................................................**3**

    **1.8.**    **Anniversary Month** ............................................................**3**

    **1.9.**    **Bankruptcy Code** ...............................................................**3**

    **1.10.**   **Bankruptcy Court or Court** ................................................**3**

    **1.11.**   **Bankruptcy Rules** ...............................................................**3**

    **1.12.**   **Claims Bar Date** .................................................................**3**

    **1.13.**   **Claims Summary** .................................................................**3**

    **1.14.**   **Causes of Action** .................................................................**3**

    **1.15.**   **Claim** ...................................................................................**4**

    **1.16.**   **Claimant** .............................................................................**4**

    **1.17.**   **Class** ....................................................................................**4**

    **1.18.**   **Confirmation** ......................................................................**4**

    **1.19.**   **Confirmation Date** .............................................................**4**

    **1.20.**   **Confirmation Order** ...........................................................**4**

    **1.21.**   **Creditor** ..............................................................................**4**

    **1.22.**   **Debtor** .................................................................................**4**

    **1.23.**   **Disputed Claim** ...................................................................**4**

    **1.24.**   **Effective Date** .....................................................................**5**

    **1.25.**   **Estate** ..................................................................................**5**

    **1.26.**   **Final Order** .........................................................................**5**

    **1.27.**   **Financial Advisors** .............................................................**5**

    **1.28.**   **Impaired Class** ....................................................................**5**

    **1.29.**   **Law Office** ..........................................................................**5**

    **1.30.**   **Lien** .....................................................................................**5**

    **1.31.**   **Net Disposable Income** .......................................................**6**

    **1.32.**   **Order** ...................................................................................**6**

    **1.33.**   **Petition** ...............................................................................**6**

    **1.34.**   **Petition Date** ......................................................................**6**

    **1.35.**   **Plan** .....................................................................................**6**

    **1.36.**   **Plan Fund** ...........................................................................**6**

    **1.37.**   **Plan Period** .........................................................................**6**

**EHRENSTEIN CHARBONNEAU CALDERIN**

501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

1.38.   Plan Payment ................................................................................. 6
1.39.   Pro Rata ......................................................................................... 6
1.40.   Proceeding or Proceedings ............................................................ 6
1.41.   Professionals .................................................................................. 6
1.42.   Proponent ....................................................................................... 7
1.43.   Reorganized Debtor ....................................................................... 7
1.44.   Scheduled ....................................................................................... 7
1.45.   Schedules of Assets and Liabilities ............................................... 7
1.46.   Siskind ............................................................................................ 7
1.47.   U.S. Trustee ................................................................................... 7


ARTICLE II.        CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 7
2.1.    Class 1.  Allowed Claims of the Internal Revenue Service ................................... 7
2.2.    Class 2.  Allowed Claims of the Palm Beach County Tax Collector. ................. 8
2.3.    Class 3.  Allowed Secured Claim of U.S. Bank National Association, as
        Trustee, successor in interest to Bank of America, National Association as
        Trustee as successor by merger to Lasalle Bank, National Association as
        Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5
        Trust. ............................................................................................. 8
2.4.    Class 4.  Allowed Secured Claim of HSBC Bank USA, National Association
        as Trustee for Nomura Home Equity Loan, Inc., Asset Backed Certificates,
        Series 2007-1. ............................................................................... 8
2.5.    Class 5.  Allowed Claim of George and Jeri Maler ............................................. 8
2.6.    Class 6.  Allowed Claim of Fiore at Gardens Condominium Association, Inc ... 9
2.7.    Class 7.  Allowed General Unsecured Creditors. ................................................ 9
2.8.    Equity Interest of Jeffrey M. Siskind ................................................................. 9


ARTICLE III.        TREATMENT OF CLAIMS UNDER THIS PLAN ............................... 9
General Matters Regarding Classification and Treatment of Claims ................................. 9


ARTICLE IV.        TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE
                   CLAIMS AND U. S. TRUSTEES FEES ................................................ 11
4.1.    Allowed Administrative Expense Claims ............................................................ 11
4.2.    United States Trustee Fees ................................................................................ 11


ARTICLE V.        ALLOWANCE AND DISALLOWANCE OF CLAIMS ........................ 11
5.1     Disputed Claims. ............................................................................................... 11
5.2     Delay of Distribution on a Disputed Claim ........................................................ 12
5.3.    Settlement of Disputed Claims ........................................................................... 12
ARTICLE VI.        PROVISIONS FOR THE ASSUMPTION OR REJECTION OF
                   EXECUTORY CONTRACTS OR UNEXPIRED LEASES .................. 12

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**6.1.**      **Contract or Leases to be Assumed or Rejected**......................................**12**
**6.2.**      **Effect of Postconfirmation Rejection.** ........................................................**12**
**6.3.**      **Deadline to File Rejection Damage Claims.** ............................................**13**


**ARTICLE VII.**        **MEANS OF EXECUTION OF THIS PLAN** ...................................**13**
**7.1.**      **Sources of Plan Funding**.............................................................................**13**


**ARTICLE VIII.**        **RETENTION OF JURISDICTION** ..............................................**14**


**ARTICLE XI.**        **MODIFICATION OF THE PLAN** ..............................................................**16**


**ARTICLE X.**        **AMENDMENT OF CLAIMS** ........................................................................**16**


**ARTICLE XI.**        **EFFECT OF CONFIRMATION**....................................................................**16**


**ARTICLE XII.**        **GENERAL PROVISIONS** ........................................................................**17**
**12.1.**      **Extension of Payment Dates**........................................................................**17**
**12.2.**      **Governing Law**...............................................................................................**17**
**12.3.**      **Headings**..........................................................................................................**17**
**12.4.**      **Notices** ............................................................................................................**17**
**12.5.**      **Severability** ....................................................................................................**17**
**12.6.**      **Successors and Assigns** ................................................................................**18**
**12.7.**      **U.S. Trustee Fees**..........................................................................................**18**

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## PLAN OF REORGANIZATION

Creditor, HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc. Asset Backed Certificates, Series 2007-1 ("HSBC Bank" or "Plan Proponent")[1], by and through its authorized agent, Attorney's Title Insurance Fund, files this Plan of Reorganization pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code.

## ARTICLE I.
## DEFINITIONS

The following capitalized terms shall have the following meanings when used in the Plan, which meanings shall be equally applicable to both the singular and plural forms of such terms.

Any term in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

1.1.    **Administrative Claims** - shall mean (i) Claims unpaid on the Effective Date, arising out of operation of the Debtor's affairs during this case and which are scheduled for payment in the ordinary course of the ongoing operations of the Debtor, or (ii) Claims of Professionals employed by the Debtor for fees and expenses which have not yet been approved by the Court or which are scheduled for payment upon Court approval.

1.2.    **Allowed Administrative Expense Claim** - shall mean an Allowed Claim for which a Claimant asserts, and is determined to be entitled to, priority pursuant to Sections 503 and 507(a)(1) and (a)(2) of the Bankruptcy Code, other than Administrative Claims.

1.3.    **Allowed Claim** - shall mean a Claim against the Debtor that (i) is allowed by a Final Order, (ii) is scheduled as liquidated, undisputed and non-contingent by the Debtor in his

---

[1]  All capitalized terms not specifically defined in this Disclosure Statement have the meaning ascribed to them in the Plan.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

Schedules of Assets and Liabilities filed with the Bankruptcy Court, as they may be amended or supplemented (collectively, the "Schedules") or (iii) is timely filed with the Clerk of the Bankruptcy Court and no objection has been made to the allowance thereof within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim.

      **1.4.**    **Allowed Priority Tax Claim** - shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

      **1.5.**    **Allowed Secured Claim** - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor have an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property serving as collateral or to the extent of the amount subject to such setoff as the case may be.

      **1.6.**    **Allowed Unsecured Claim** - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

**1.7.** **Anniversary Date** - shall mean the date corresponding to the Confirmation Date, of the Plan Proponent's Plan.

**1.8.** **Anniversary Month** - shall mean the month corresponding to the month in which the Confirmation Date falls continuing in each subsequent year.

**1.9.** **Bankruptcy Code** - shall mean the United States Bankruptcy Code, 11 U. S. C. § 101 *et. seq.* and all amendments thereto.

**1.10.** **Bankruptcy Court or Court** - shall mean the United States Bankruptcy Court for the Southern District of Florida, in which the Proceedings were filed or such other court as may hereafter have jurisdiction of and act with respect to the Proceedings.

**1.11.** **Bankruptcy Rules** - shall mean the Federal Rules of Bankruptcy Procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

**1.12.** **Claims Bar Date** - shall mean June 12, 2013, which is the date set by the Bankruptcy Court as the last day for filing Proofs of Claim against the Debtor.

**1.13.** **Claims Summary** – shall mean the analysis of the Proofs of Claim filed by Creditors in this case, prepared by the Financial Advisors and attached as **Exhibit "C"** to this Disclosure Statement.

**1.14.** **Causes of Action** - shall be used in its broadest sense and shall include, but not limited to, all causes of action of the Debtor and all causes of action which a Trustee would have if the proceedings were converted on the Confirmation Date to a proceeding under Chapter 7 of the Code and a Trustee were appointed.  Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under applicable federal or state common law, whether or not they are the subject of

3

presently pending litigation and whether they arise before or after the Confirmation Date, as well as rights belonging to the Debtor pursuant to Sections 506, 510, 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

**1.15.**   **Claim** - shall mean any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

**1.16.**   **Claimant** - shall mean the holder of a Claim.

**1.17.**   **Class** - shall mean any group of substantially similar Claims as classified in Articles 3 and 4 of the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

**1.18.**   **Confirmation** - shall mean the entry of an Order of the Bankruptcy Court confirming this Plan.

**1.19.**   **Confirmation Date** - shall mean the date upon which the Confirmation Order is entered by the Court after a hearing conducted pursuant to Section 1128 of the Bankruptcy Code.

**1.20.**   **Confirmation Order** - shall mean the order of the Bankruptcy Court confirming the Plan.

**1.21.**   **Creditor** - shall have the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.22.**   **Debtor** - shall mean Jeffrey M. Siskind.

**1.23.**   **Disputed Claim** - shall mean any Claim which is scheduled as disputed or as to which an objection has been filed but has not been resolved by Order of the Bankruptcy Court prior to the Effective Date.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**1.24.** **Effective Date** - will occur fifteen (15) days from the date of the entry of the Confirmation Order.

**1.25.** **Estate** - shall mean the estate created by § 541 of the Bankruptcy Code upon Siskind's filing of the Chapter 11 Petition with the Bankruptcy Court in this Proceeding.

**1.26.** **Final Order** - shall mean an Order or judgment that has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and no appeal or petition for certiorari review or rehearing is pending, or (ii) if appeal, review, reargument, rehearing or certiorari of the Order has been sought, the Order has been affirmed or the request for review, reargument, rehearing or certiorari has been denied and the time to seek a further appeal, review, reargument, rehearing or certiorari has expired, as a result of which such Order shall have become final and non-appealable in accordance with applicable law.

**1.27.** **Financial Advisors** – shall mean the professionals at Zucker Forensics, Inc. retained by HSBC Bank in this Chapter 11 Case to analyze and advise on the Debtor's financial affairs.

**1.28.** **Impaired Class** - shall have the meaning set forth in 11 U. S. C. § 1124. A Class is impaired if the legal, equitable and contractual rights to which the Claim is entitled are altered.

**1.29.** **Law Office** – shall mean the Law Office of Jeffrey M. Siskind a/k/a Siskind Legal Services, LLC, a/k/a Jeffrey M. Siskind Law Office.

**1.30.** **Lien** - shall mean any charge against or interest in property to secure payment of an Allowed Claim and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in the Bankruptcy Code or in any applicable state or federal law.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**1.31.** **Net Disposable Income** - shall have the meaning ascribed to the term in 11 U.S.C. §1325(b)(2).

**1.32.** **Order** - shall mean an Order or judgment of the Bankruptcy Court as entered on the docket.

**1.33.** **Petition** - shall mean the Debtor's Chapter 11 Bankruptcy Petition filed on the Petition Date.

**1.34.** **Petition Date** - shall mean February 11, 2013.

**1.35.** **Plan** - shall mean the Plan of Reorganization as it may be further amended or modified, and including all addenda, exhibits, schedules or other attachments thereto.

**1.36.** **Plan Fund** – shall mean such sums that the Debtor will contribute for payment of Allowed Claims for a period of five (5) years from the Debtor's Net Disposable Income.

**1.37.** **Plan Period** - shall mean the period of time required to make the disbursements contemplated pursuant to the Plan.

**1.38.** **Plan Payment** - shall mean disbursements contemplated in the Plan.

**1.39.** **Pro Rata** - shall mean the proportion an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class, except as otherwise specified herein.

**1.40.** **Proceeding or Proceedings** - shall mean the instant Chapter 11 case of the Debtor currently pending in the Bankruptcy Court.

**1.41.** **Professionals** - shall mean persons or entities retained or to be compensated pursuant to sections 326, 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**1.42.**   **Plan Proponent** - shall mean, Creditor, HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc. Asset Backed Certificates, Series 2007-1, by and through its authorized agent, Attorney's Title Insurance Fund.

**1.43.**   **Reorganized Debtor** - shall mean the Debtor, Jeffrey M. Siskind, in his restructured and reorganized form as of and after the Effective Date.

**1.44.**   **Scheduled** - shall mean as set forth in the Schedules of Assets and Liabilities.

**1.45.**   **Schedules of Assets and Liabilities** - shall mean the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court, as the same have been or may be amended from time to time prior to the Effective Date.

**1.46.**   **Siskind** – shall mean the Debtor, Jeffrey M. Siskind.

**1.47.**   **U. S. Trustee** – shall mean the United States Trustee for the Southern District of Florida.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Debtor or rejection of executory contracts and/or unexpired leases, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan.  Classification of Claims against the Debtor, with the exception of Administrative Claims, which are unclassified pursuant to 11 U.S.C. § 1123(a)(1).

**2.1.**   **Class 1.   Allowed Claims of the Internal Revenue Service.**   The Internal Revenue Service (the "IRS") has filed a proof of claim evidencing total indebtedness in the amount of $78,997.94, of which $66,113.34 is priority in nature [POC #1].

7

**2.2.**    __Class 2.__  **Allowed Claims of the Palm Beach County Tax Collector.**  The Palm Beach County Tax Collector's office filed a total of four proofs of claim in this case [POC# 2, 3, 4, 14] for indebtedness related to real and personal property taxes assessed on the Debtor's various ownership interests.  Proof of Claim #14, evidences indebtedness assessed for 2013 real property taxes in the amount of $2,433.31 due date on or before April 1, 2014 related to the Debtor's ownership interests in a property located at 341 53rd Street, West Palm Beach, Florida (the "__West Palm Beach Duplex__").

**2.3.**    __Class 3.__  **Allowed Secured Claim of U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association as Trustee as successor by merger to Lasalle Bank, National Association as Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5 Trust ("__U.S. Bank__").**  The claim of U.S. Bank is secured by the Debtor's primary residence and homestead real property located at 3465 Santa Barbara Drive, Wellington, Florida (the "__Homestead__").  U.S. Bank filed Proof of Claim #6, evidencing indebtedness in the amount of $2,917,315.45.

**2.4.**    __Class 4.__  **Allowed Secured Claim of HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc. Asset Backed Certificates, Series 2007-1.**  The claim of HSBC Bank is secured by the Debtor's real property located at 401 Carysfort Road, Key Largo, Florida (the "__Key Largo Property__").  HSBC Bank filed Proof of Claim #12, evidencing indebtedness in the amount of $1,265,178.55.

**2.5.**    __Class 5.__  **Allowed Claim of George and Jeri Maler.**  According to the Debtor's Schedules, the Debtor is indebted to George and Jeri Maler in the amount of $145,000.00, which debt is secured by interests in "motorized vehicles" and a portion of the value of the West Palm Beach Duplex owned jointly by the 341 53rd Trust and the Jeffrey M. Siskind Trust.

8

**2.6.    Class 6.    Allowed Claim of Fiore at Gardens Condominium Association, Inc.** The claim of Fiore at the Gardens Condominium Association, Inc. in the amount of $32,997.36 [POC #13] pursuant to the judgment entered against the Debtor on February 6, 2013 in the Circuit Court of the 15th Circuit in and for Palm Beach County, in the case styled *Fiore at the Gardens Condominium Association, Inc. vs. Jeffrey M. Siskind, et. al,* Case No. 502011CA002717XXXMBAW, arises from unpaid condominium fees associated with the condominium unit owned by the 7102 Fiore Trust and Steven Wilkins located at 17103 Myrtlewood Circle West, Palm Beach Gardens, FL.  Upon information and belief, 7102 Fiore Trust is an entity affiliated with the Debtor.

**2.7.    Class 7.    Allowed General Unsecured Creditors.**  Class 7 is comprised of all general unsecured claims as well as unsecured deficiency claims based on the values of the real properties owned by the Debtor or the Debtor's business entities on the Effective Date.  Holders of allowed unsecured deficiency claims include, without limitation the following: JP Morgan Chase [POC #9], OB Real Estate Holdings 1732, LLC [POC #7], Trisun Financial [POC #10], the Miriam Siskind Trust [POC #11], and Flagstar Bank FSB.

**2.8.    Class 8.    Equity Interest of Jeffrey M. Siskind.**  Class 8 consists of Siskind's Equity Interests, which are retained under the Plan.

**ARTICLE III.**
**TREATMENT OF CLAIMS UNDER THIS PLAN**

**General Matters Regarding Classification and Treatment of Claims.**

**3.1.**    Except to the extent the holder of an Allowed Claim or Allowed Interest against the Debtor agrees to accept different but lesser treatment, the treatment of Allowed Claims and Allowed Interests shall be as follows:

9

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1<br>Internal Revenue Service | Not Impaired; Not Entitled to Vote | On the Effective Date, Debtor will commence making payments in the amount of $1,333.00 over 45 months at an interest rate of 2% on the portion of the IRS debt that is priority in nature. The IRS shall receive an allowed unsecured claim in the amount of $12,884.60 to be paid pro-rata with Class 7 unsecured creditors. |
| Class 2<br>Allowed Claims of Palm Beach County Tax Collector | Not Impaired; Not Entitled to Vote | Proof of Claim #14 will be paid in the ordinary course of business on or before April 1, 2014 or will be paid in full on the Effective Date. All other claims will be assumed and paid in the ordinary course of business. To the extent that on the Effective Date any ad valorem taxes are due those shall be paid monthly over a term of 45 months and bearing an interest rate of 18% per year. |
| Class 3<br>Allowed Claim of U. S. Bank | Impaired; Entitled to Vote | On the Effective Date, Debtor will commence making payments to U. S. Bank pursuant to the terms of the loan set forth in Proof of Claim # 6. U.S. Bank will retain a first priority lien on the Homestead which will remain intact and in full force and effect until the obligations of the underlying indebtedness are satisfied in full. Any arrearages will be added to the principal balance. |
| Class 4<br>Allowed Claim of HSBC Bank | Impaired; Entitled to Vote | On the Effective Date, the Debtor will commence making payments to HSBC Bank pursuant to the terms of the loan set forth in Proof of Claim #12. HSBC Bank's retain a first priority lien on the Key Largo Property which will remain intact and in full force and effect until the obligations of the underlying indebtedness are satisfied in full. Any arrearages will be added to the principal balance. |
| Class 5<br>Allowed Claim of George and Jeri Maler | Impaired; Entitled to Vote | On the Effective Date, the Debtor will commence making payments to George and Jeri Maler pursuant to the terms of their loan agreement and George and Jeri Maler will preserve a first priority lien on the WPB Duplex and the "motorized vehicles". Any arrearages on the loan will be added to the principal balance. |
| Class 6<br>Fiore at Gardens Condominium Association, Inc. | Impaired; Entitled to Vote | This claim will be paid in 45 monthly installments, with the first payment due on the Effective Date and shall beari interest at a rate of four and a half percent (4.5%) per year. |
| Class 7<br>Allowed General Unsecured Claims | Impaired; Entitled to Vote | Class 7 shall receive periodic pro rata dividends from the Plan Fund for a period of five (5) years with the first payment due on the Effective Date, and every year thereafter, as follows: (i) $34,336.00 during Year One, (ii) $63,814.00 during Year Two, (iii) $86,564.00 during Year Three, (iv) $105,911.00 during Year Four, and (v) $126,393.00 during Year Five. |

10

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 8 Equity Interests of the Debtor | Unimpaired; Presumed to accept; Not Entitled to Vote | The Equity Interests of Jeffrey Siskind are preserved under the Plan. |

## ARTICLE IV.
## TREATMENT OF ALLOWED ADMINISTRATIVE
## EXPENSE CLAIMS AND U. S. TRUSTEES FEES

**4.1.    Allowed Administrative Expense Claims**.  Each holder of an Administrative Expense Claim in this Case allowed under § 503 of the Code will be paid in full on the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtor.  All Administrative Claims incurred in the ordinary course of the Debtor's affairs, including without limitation, income taxes, shall be assumed and paid by the Debtor in the ordinary course of business pursuant to customary terms and due dates.

**4.2.    United States Trustee Fees.**    All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U. S. Trustee Fees owed on or before the Confirmation Date of the Plan Proponent's Plan will be paid by the Debtor on the Effective Date.

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.1.    Disputed Claims.** (a) Claim that is listed on the appropriate Debtor's Schedules that is not disputed, contingent or unliquidated, but as to which an objection has been filed, and such objection has not been withdrawn or denied by a Final Order; (b) a Claim that is listed on the appropriate Debtor's Schedules as disputed, contingent or unliquidated; or (c) a proof of claim or request for payment of an Administrative Claim that has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law.

11

**5.2.** **Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is allowed.

**5.3.** **Settlement of Disputed Claims.** The Plan Proponent may contest Claims by filing with the Court objections to Claims and serving such objections upon the respective holders of the Claims to which objections are lodged. The service and prosecution of such objections shall be subject to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Florida.

**ARTICLE VI.**
**PROVISIONS FOR THE ASSUMPTION**
**OR REJECTION OF EXECUTORY**
**CONTRACTS OR UNEXPIRED LEASES**

**6.1.** **Contract or Leases to be Assumed or Rejected.** On the Effective Date, the Debtor, pursuant to section 365 of the Bankruptcy Code, shall reject all of his executory contracts and unexpired leases except those that: (i) are the subject of motions to assume or reject pending on the Confirmation Date; (ii) were assumed before the Confirmation Date; or (iii) become the subject of a dispute over the amount or manner of cure and for which the Debtor makes a motion, at any time, to reject such contract or lease based upon the existence of such dispute; provided, however, that the Debtor shall not be required to assume or reject any executory contract or unexpired lease with any party that is a Debtor under the Bankruptcy Code unless and until such contract or lease has been assumed or rejected by such other party. All contracts or leases not assumed or reserved shall be deemed rejected.

**6.2.** **Effect of Postconfirmation Rejection.** The entry by the Bankruptcy Court after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease shall result in such rejection being a pre-petition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

**6.3.** **Deadline to File Rejection Damage Claims.** Each Person who is a party to a contract or lease rejected under the Plan must file, not later than thirty (30) days after the Confirmation Date, a proof of Claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.

## ARTICLE VII.
## MEANS OF EXECUTION OF THIS PLAN

**7.1.** **Sources of Plan Funding.** The Plan Fund is comprised of the aggregate sum of $417,018.00 cash over a period of five (5) years. By committing the value of his Net Disposable Income, the Plan Fund shall provide to Allowed Class 7 Claimholders an amount greater than the liquidation value of the Debtor's bankruptcy estate at Confirmation. The total value of non-exempt personal property (net of secured claims) listed on **Exhibit "B"** is $138,727.00. Accordingly, there is significantly less value to be generated in the event of liquidation. Notwithstanding the foregoing, the Debtor shall nonetheless contribute the value of the Plan Fund in accordance with 11 U.S.C. § 1129(a)(15)to pay Allowed Claims, without prejudice to the Debtor to discount the sums payable to account for present value in the event of an early payoff. The primary source of income for the Plan Fund is derived from the Law Office. If the Debtor's interests in the Law Office were to be liquidated, this would result in no available distribution for creditors. Furthermore, the Plan Fund represents value in an amount that is approximately three hundred percent (300%) greater than the value of the Debtor's non-exempt assets. Class 7 Claimholders are, therefore, receiving a greater dividend than they would receive if the case was pending under Chapter 7.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

## ARTICLE VIII.
## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain jurisdiction of the Proceedings pursuant to the provisions of the Bankruptcy Code until the Proceedings are closed and further with respect to the following matters:

**8.1.**    To classify, allow or disallow Claims, direct distributions under the Plan and adjudicate all controversies concerning classification or allowance of any Claim.

**8.2.**    To enforce performance of the Plan against the Debtor, Claimants or any other entity.

**8.3.**    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases and to consummate the rejection and termination thereof.  To hear and determine all matters relating to the assumption of executory contracts and unexpired leases and the assumption and assignment of executory contracts and unexpired leases.

**8.4.**    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

**8.5.**    To adjudicate all Claims to an ownership interest in any property of the Debtor, the Estate or any proceeds thereof.

**8.6.**    To adjudicate all Claims or controversies arising out of any purchase, sale or contract made or undertaken by the Debtor during the pendency of the Proceeding.

**8.7.**    To recover all assets and property of the Debtor wherever located.

**8.8.**    To hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**8.9.**     To hear and determine any action or proceeding brought by the Debtor or other party-in-interest under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 363(h) of the Bankruptcy Code.

**8.10.**     To hear and determine all actions and proceedings brought by the Plan Proponent, Debtor, or other party-in-interest arising in or related to the Proceedings or arising under the Bankruptcy Code.

**8.11.**     To determine the validity, extent and priority of all liens against property of the Debtor's Estate.

**8.12.**     To consider any modification of the Plan under Section 1127 of the Bankruptcy Code or under Rule 3020 of the Federal Rules of Bankruptcy Procedure and/or modification of the Plan after substantial consummation as defined in Section 1101(2) of the Bankruptcy Code.

**8.13.**     To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan.

**8.14.**     To hear and determine all requests for compensation and/or reimbursement of expenses of Professionals that may be made after the Confirmation Date.

**8.15.**     To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Proceedings, including the matters set forth herein, or if a party-in-interest elects to bring an action in any other forum, this Article 7 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## ARTICLE IX.
## MODIFICATION OF THE PLAN

The Plan Proponent may propose amendments or modifications to the Plan at any time prior to the Confirmation Date without leave of the Bankruptcy Court.  After the Confirmation Date, parties-in-interest may, with Bankruptcy Court approval and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE X.
## AMENDMENT OF CLAIMS

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court, unless the Claimant has specifically reserved a right to amend its Claim.

## ARTICLE XI.
## EFFECT OF CONFIRMATION

Upon the Effective Date all of the provisions of this Plan and amendments, if any, including all appendices and other exhibits hereto, shall be binding on the Debtor, the Estate, all Creditors and all other entities who are affected (or whose interests are affected) in any manner by the Plan.

As of the Effective Date, all property of the Estate, and the proceeds thereof, and any property or interest in property acquired by the Estate after the Effective Date shall be vested in the Reorganized Debtor.  All of such property shall be free and clear of all Claims except the Claims of Classes as treated in Article II and III of this Plan.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

# ARTICLE XII.
## GENERAL PROVISIONS

**12.1.** **Extension of Payment Dates.** If any payment under this Plan falls due on a Saturday, Sunday or other day that is not a Business Day, then such due date shall be extended to the next following Business Day.

**12.2.** **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the Laws of the State of Florida.

**12.3.** **Headings.** The Article and Section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affects the terms, provisions or interpretations of this Plan.

**12.4.** **Notices.** All notices required to be made in or under this Plan shall be in writing and to the following:  If to the Plan Proponent:

> **Jacqueline Calderin, Esq.**
> **Ehrenstein Charbonneau Calderin**
> 501 Brickell Key Drive, Suite 300
> Miami, Florida 33131
> T 305.722.2002        F 305.722. 2001
> E-Mail: jc@ecclegal.com

or at such other address as a party may have designated as its address for such purpose or at any address of any such party appearing in the records of the party giving notice.

**12.5.** **Severability.** Should any item or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

17

**12.6.** <u>**Successors and Assigns.**</u> Except as may be otherwise provided in this Plan, the rights and obligations of any entity named or referred to herein shall be binding upon, and shall inure to the benefit of, the successors and assigns of each such entity.

**12.7.** <u>**U.S. Trustee Fees.**</u> The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After Confirmation, the Reorganized Debtor shall file with the Court, and serve on the United States Trustee, a quarterly disbursement report for each quarter, or portion thereof, until a Final Decree has been entered, or the case dismissed, or converted to another chapter, in a format prescribed by and provided to the Debtor by the United States Trustee.

This Plan of Reorganization is dated April 30th, 2014, and is hereby approved by the undersigned.

*Creditor, HSBC Bank, NA, by and through its agent, Attorney's Title Insurance Fund, Plan Proponent*

By: _____
Name: _____ Tiffany J. Riggs _____
Title: _____ Senior Claims Counsel _____

Submitted by:

By: _____
        **Jacqueline Calderin, Esq.**
        **Fl. Bar No.: 134414**
        **Ehrenstein Charbonneau Calderin**
        501 Brickell Key Drive, Suite 300
        Miami, Florida 33131
        T 305.722. 2002    F 305.722.2001
        E-Mail: jc@ecclegal.com
        www.ecclegal.com
        *Counsel for the Plan Proponent*

# Exhibit "B"

**Jeffrey Marc Siskind**
Case No.: 13-13096-PGH, filed 2/11/2013
Debtor-in-Possession

| Liquidation analysis as of January 31, 2014 | | | | |
|---|---|---|---|---|

| | | | | Scheduled |
|---|---|---|---|---|
| **Sources of Recoveries** | | | | |
| Bank Balance @ December 31, 2013 | | | | $ 4,060 |
| Cash on Hand @ January 31, 2014 | | | | 20,000 |
| Proceeds from Operations through January 31, 2014 | | | | (1,333) |
| Collection of Accounts Receivable (net) | | | | 15,000 |
| Property Claimed as Exempt on Schedule C in excess of allowable amounts | | | | |
| | Specific Law | Claimed | Allowed | |
| Cash on Hand & CKG | **FL Const. Art X, Sec 4(a)(2)** | 3,200 | **1,000** | 2,200 |
| Household Goods, Furniture & Collectibles | FL Const. Art X, Sec 4(a)(2) | 15,000 | - | 15,000 |
| Wearing Apparel, Jewelry & Tools | FL Const. Art X, Sec 4(a)(2) | 3,000 | - | 3,000 |
| Office Furniture & Equipment | FL St. Ann. Sec 122.15 | 4,500 | - | 4,500 |
| All property owned as a Tenant by the Enirety | FL Const. Art X, Sec 4(a)(2) | 21,730 | 21,730 | - |
| All property owned as a Tenant by the Enirety | Proof of Title reqd (vehicles) | 13,500 | - | 13,500 |
| Real Property: Wellington Homestead Residence | 1/2 acre of 1.78 acre, land | 1,800,000 | 1,378,064 | 421,936 |
| Motorized Vehicles | FL St. Ann. Sec 222.25(1) | 13,500 | 1,000 | 12,500 |
| Remaining personal property of every type | "WILDCARD" | 50,000 | - | 50,000 |
| | | 1,924,430 | 1,401,794 | |
| Estimated Net Proceeds from sale of Constellation Energy shares | | | | 350 |
| Estimated Net Proceeds from sale of 401 Careysfort Road (Key Largo real estate) | | | | 600,000 |
| Estimated Net Proceeds from sale of 341 53rd Street Trust (WPB Duplex) | | | | 60,000 |
| Estimated Net Proceeds from sale of 17102 Myrtelwood West (NPB condo) - S548 claim? | | | | 110,000 |
| Estimated Net Proceeds from sale of other Assets | | | | - |
| Estimated Net Proceeds from sale of 100% member interest in TP5, LLC (Ch 11) | | | | - |
| Estimated Net Proceeds from sale of 100% member interest in Siskind Legal Svcs, LLC | | | | - |
| Estimated Net Proceeds from sale of 100% member interest in ITWP, LLC | | | | Unknown |
| Estimated Net Proceeds from sale of other Assets | | | | Unknown |
| Cause of Action against _____ for _____ (Del Caribe, Domenican lawsuit) | | | | Unknown |
| Cause of Action against _____ for _____ (Zokaites, N. Mexico lawsuit) | | | | Unknown |
| Other Causes of Action incl Chapter 5 Claims | | | | Unknown |
| *Total Sources of Recoveries* | | | | $ 1,330,713 |
| | | | | |
| Secured Creditors | | | | |
| Bank of America (Wellington homestead) | | | | 421,936 |
| HSBC (Key Largo RE) | | | | 600,000 |
| George & Jeri Maler (WPB Duplex) | | | | 60,000 |
| Bank United (NPB Condo) | | | | 110,000 |
| *Total Secured Creditors* | | | | $ 1,191,936 |
| **Total Available for Administrative, Priority and Unsecured Creditors** | | | | $ 138,777 |
| Administrative Claims | | | | |
| Unpaid expenses necessary to preserve the Estate | | | | - |
| Chapter 7 Trustee Fees | | | | 63,171 |
| Chapter 7 Trustee's Professionals | | | | 20,000 |
| United States Trustee Fees | | | | 9,750 |
| Chapter 11 Debtor-in-Possession's Professionals | | | | 50,000 |
| *Total Administrative Claims* | | | | $ 142,921 |
| **Total Available for Priority and Unsecured Creditors** | | | | $ - |
| Priority Creditors: | | | | |
| IRS | | | | 29,277 |
| Unpaid Wages and Commissions | | | | - |
| *Total Unsecured Priority Creditors* | | | | $ 29,277 |
| **Total Available for General Unsecured Creditors** | | | | $ - |
| General unsecured creditors - claims scheduled | | | | 2,023,834 |
| General unsecured creditors - claims not yet filed | | | | - |
| Deficiency Claim of Secured Creditors (scheduled) | | | | (1,191,936) |
| | | | | $ 831,898 |
| | | | | |
| **Distribution to General Unsecured Creditors** | | | | $ - |
| Distribution % | | | | 0.00% |

# Exhibit "C"

In re Jeffrey M. Siskind - 13-13096-PGH - Claims Analysis

| Claim # | Claimant | Amount | Alleged Priority | Collateral's Value (POC) | Notes |
|---|---|---|---|---|---|
| 1 | IRS | $85,242.18 | $72,357.58 priority $12,884.60 (GUC) | N/A | |
| 2 | PB County Tax Assessor | $2,433.30 | Secured + 18% interest | $92,478.00 | Secured to real property in PB |
| 3 | PB County Tax Assessor | $114.00 | Secured + 18% interest | $1,906.00 | Secured to Debtor's vehicle |
| 4 | PB County Tax Assessor | $206.75 | Secured + 18% interest | $8,750.00 | Secured to tangible personal property |
| 5 | George Schuhmann | $7,085.00 | unsecured | N/A | Invoice for legal services |
| 6 | JPMorgan Chase | $2,917,315.45 | Secured | ? | Secured to real property in Wellington |
| 7 | OB Real Estate Holdings 1732, LLC | $1,563,852.15 | unsecured | N/A | Personal guaranty to OptimumBank to secure loan to TP5, LLC |
| 8 | Trump Plaza Condo Assoc. | $10,386.20 | unsecured | N/A | Condo association fees |
| 9 | JPMorgan Chase | $217,366.05 | Secured | $900k (public records) | Secured to Key Largo Property |
| 10 | Trisun Financial Group, LLC | $195,473.71 | Secured | $995,573.00 | Secured to real property in Wellington |
| 11 | Miriam M. Siskind Trust | $398,060.87 | Secured | $900k (public records) | Secured to Key Largo Property |
| 12 | HSBC | $1,265,178.55 | Secured | $900k (public records) | Secured to real property in Wellington |
| 13 | Fiore at the Gardens Condo Assoc. | $32,997.36 | Secured | ? | Maintenance fees, seeming arising from/secured to Wellington property |
| 14 | PB County Tax Assessor | $2,433.31 | Secured + 18% interest | $92,478.00 | Secured to real property in PB |
| 15 | PB County Tax Assessor | $19,833.33 | Secured + 18% interest | $924,485.00 | Ad valorem taxes |
| 16 | PB County Tax Assessor | $206.78 | Secured + 18% interest | $8,750.00 | Secured to tangible personal property |

Legend:
- Key Largo Property
- Duplicate
- Non-KL Real Property

# Exhibit "D"

**Jeffrey Marc Siskind**
Case No. 13-13096-PGH
Debtor-in-Possession

| Post Effective Date - 5 Year Projection | | | | | |
|---|---|---|---|---|---|
| | **2014** | **2015** | **2016** | **2017** | **2018** |
| | **$** | **$** | **$** | **$** | **$** |
| **Revenue** | | | | | |
| Gross Revenue - Legal Practice | 435,600 | 470,448 | 498,675 | 523,609 | 549,789 |
| **Total Gross Revenue** | 435,600 | 470,448 | 498,675 | 523,609 | 549,789 |
| **Operating Expenses** | | | | | |
| **Legal Practice** | | | | | |
| Contract Labor | 44,554 | 45,445 | 46,354 | 47,281 | 48,226 |
| Office Rent | 32,436 | 33,085 | 33,746 | 34,421 | 35,110 |
| Electric | 7,344 | 7,491 | 7,641 | 7,794 | 7,949 |
| Telephone | 4,406 | 4,495 | 4,584 | 4,676 | 4,770 |
| Internet | 1,040 | 1,061 | 1,082 | 1,104 | 1,126 |
| Clerk/Court Fees | 3,060 | 3,121 | 3,184 | 3,247 | 3,312 |
| Equip. Maint. | 2,448 | 2,497 | 2,547 | 2,598 | 2,650 |
| Supplies | 1,224 | 1,248 | 1,273 | 1,299 | 1,325 |
| Insurance | 428 | 437 | 446 | 455 | 464 |
| Travel | 12,240 | 12,485 | 12,734 | 12,989 | 13,249 |
| Licenses, Subscriptions, CLE | 1,836 | 1,873 | 1,910 | 1,948 | 1,987 |
| Marketing & Promotion | 9,180 | 9,364 | 9,551 | 9,742 | 9,937 |
| **Total Legal Practice Expenses** | 120,197 | 122,601 | 125,053 | 127,554 | 130,105 |
| **Household** | | | | | |
| George Maler Loan | 11,844 | 11,844 | 11,844 | 11,844 | 11,844 |
| Insurance – auto | 2,020 | 2,060 | 2,101 | 2,143 | 2,186 |
| Insurance – health | 7,956 | 8,115 | 8,277 | 8,443 | 8,612 |
| Medical | 1,224 | 1,248 | 1,273 | 1,299 | 1,325 |
| Electric | 8,568 | 8,739 | 8,914 | 9,092 | 9,274 |
| Water | 551 | 562 | 573 | 585 | 596 |
| HOA | 1,408 | 1,436 | 1,464 | 1,494 | 1,524 |
| Maintenance | 7,344 | 7,491 | 7,641 | 7,794 | 7,949 |
| Transportation - ground | 7,956 | 8,115 | 8,277 | 8,443 | 8,612 |
| Transportation – other | 7,344 | 7,491 | 7,641 | 7,794 | 7,949 |
| Telephone, TV, internet | 4,406 | 4,495 | 4,584 | 4,676 | 4,770 |
| Mobile Phones | 4,039 | 4,120 | 4,202 | 4,286 | 4,372 |
| General household | 58,752 | 59,927 | 61,126 | 62,348 | 63,595 |
| Income Tax reserve | 24,480 | 24,970 | 25,469 | 25,978 | 26,498 |
| Travel | 12,240 | 12,485 | 12,734 | 12,989 | 13,249 |
| **Total Household Expenses** | 160,132 | 163,097 | 166,122 | 169,208 | 172,355 |
| **Total Operating Expenses** | **280,328** | **285,698** | **291,175** | **296,762** | **302,460** |
| **Disposable Cash Flow from current activities** | **155,272** | **184,750** | **207,500** | **226,847** | **247,329** |
| **Projected share of new venture: JurisMortgage** | | | | | |
| **Chapter 11 Plan payments** | | | | | |
| Secured Creditor | 99,884 | 107,875 | 114,348 | 120,065 | 126,068 |
| Priority Creditors | - | - | - | - | - |
| General Unsecured Creditors | 55,387 | 76,875 | 93,152 | 106,782 | 121,261 |
| **Total Chapter 11 Plan Payments** | **155,272** | **184,750** | **207,500** | **226,847** | **247,329** |
| **Total Net Cash Flow** | **$        -** | **$        -** | **$        -** | **$        -** | **$        -** |