

**ORDERED in the Southern District of Florida on October 22, 2014.**

Paul G. Hyman, Jr.
**Chief United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

*In re:*

JEFFREY M. SISKIND,

        Debtor.               /

Case No.: 13-13096-PGH

Chapter 11

**ORDER CONFIRMING HSBC BANK USA, NATIONAL ASSOCIATION'S**
**AND JEFFREY M. SISKIND'S SECOND AMENDED PLAN OF REORGANIZATION**

THIS MATTER came before the Court on Tuesday, September 30, 2014 at 9:30 A.M. (the "Confirmation Hearing") upon the *Second Amended Plan of Reorganization for Jeffrey M. Siskind,* [ECF# 222] (the "Plan") proposed by HSBC Bank USA, National Association, as Trustee for Nomura Home Equity Loan, Inc. Asset Backed Certificates, Series 2007-1, (the "HSBC Bank" or "Proponent") and joined by Jeffrey Marc Siskind (the "Debtor" or "Co-Proponent", pursuant to *Joinder in HSBC Bank USA, National Association's Second Amended Disclosure Statement and Plan as Co-Proponent*) [ECF# 323] (the "Joinder"). In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i) *Certificate of*

1

*Plan Proponent on Acceptance of Plan, Report on Amount to Be Deposited, Certificate of Amount Deposited And Payment of Fees* [ECF# 332] (the "Ballot Certificate"); and the (ii) *Confirmation Affidavit of Jeffrey M. Siskind in Support of Plan of Reorganization* [ECF# 333] (the "Confirmation Affidavit").  The Court has also considered: (i) the entire record in this Chapter 11 Case, including *HSBC Bank USA, National Association's Second Amended Disclosure Statement in Support of Second Amended Plan of Reorganization* [ECF# 223] (the "Disclosure Statement") and the Plan; (ii) the consent of the United States Trustee to the Plan on the terms set forth therein; (iii) the argument of counsel; (iv) the objections of record[1]; (v) the modifications to the Plan announced without objection on the record at the Confirmation Hearing; (vi) the testimony of the Debtor as set forth in the Confirmation Affidavit which was admitted into evidence at the Confirmation Hearing without objection.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure:[2]

A.    On August 20, 2014, the Court entered the *Order Conditionally Approving Disclosure Statement; Setting Hearing on Final Approval of Disclosure Statement and Confirmation of Chapter 11 Plan; (III) Setting Various Deadlines; and (IV) Describing Plan Proponent's Obligations* [ECF# 231]; which set various deadlines, including the Confirmation Hearing and conditionally approved the Disclosure Statement.

---

[1] The following parties filed objections to confirmation of the Plan prior to the Confirmation Hearing:  (a) Christiana Trust, a Division of Wilmington Savings Funds Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2012-19 as serviced by Rushmore Loan Management Services LLC [ECF #245] (the "Christiana Trust Objection"); (b) U.S. Bank National Association [ECF #246]; (c) Jeffrey Marc Siskind [ECF #270]; (d) Miriam M. Siskind Trust [ECF #279]; (e) William L. Siskind [ECF #280]; (f) OB Real Estate Holdings 1732, LLC [ECF #281].

[2]    Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact.  *See In re Am. Family Enters.*, 256 B.R. 377, 385 n.2 (Bankr. D. N.J. 2000); *In re Antar,* 122 B.R. 788, 789 (Bankr. S.D. Fla. 1990).

B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan. The Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(1) and (b)(2)(L), 1334(a) and (b), the United States District Court's general order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules;

D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims[3] that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code;

G. Articles II of the Plan specifies any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfies section 1123(a)(2) and (3) of the Bankruptcy Code;

H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest has agreed to less favorable treatment, if applicable, and accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code;

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

3

I. Article V of the Plan sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code. The Plan will be funded through periodic plan payments from revenue generated by the Reorganized Debtor during the term of the Plan.

J. Each of the Voting Classes that have voted have accepted the Plan in the requisite number of ballots and in the requisite dollar amount as required by 11 U.S.C § 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Southern District of Florida and the *Order Setting Hearing on Approval of Disclosure Statement and Confirmation of Chapter 11 Plan, Setting Various Deadlines and Describing Plan Proponent's Obligations* (the "Confirmation Procedures Order") [ECF# 231];

L. The Plan was voted on by the following Classes of Impaired Claims that were entitled to vote under the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Procedures Orders: Class 3, 4, 5, 6 and 7;

M. The Ballot Certificate reflects that Class 3 and 5 rejected the Plan. Class 4 and 7 accepted the Plan. No ballots were filed for Classes 6. Classes 1, 2, and 8 were not entitled to vote on the Plan;

N. The class of creditors with claims to be assumed in the ordinary course of business are unimpaired, and are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code;

O. The Plan complies with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under

4

the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies HSBC as the Proponent;

P.  The Proponent of the Plan complied with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129;

Q.  The Plan has been proposed and submitted to all Creditors and Interest Holders in good faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R.  All payments made, or to be made, by the Debtor in connection with this Chapter 11 Case or in connection with the Plan either have been approved by or are subject to the approval of the Bankruptcy Court, including applications for compensation and reimbursement of expenses and, therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(4);

S.  The Plan does not discriminate unfairly, is fair and equitable, and otherwise complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to each Class of Claims or Interests that are impaired under the Plan, including without limitation, all Classes of Allowed Claims will receive more on account of their Claims under this Plan, than they would receive in a chapter 7 liquidation;

T.  The Plan and Disclosure Statement were accompanied by projections that support the financial viability of the Reorganized Debtor and, accordingly, the requirements of 11 U.S.C. § 1129(a)(11) are satisfied;

U.  United States Trustee's quarterly fees shall be paid as due on a timely basis in the ordinary course;

V.  No administrative expense claims were asserted, except for payment of United States Trustee's quarterly fees, fees and costs of Debtor's counsel, and fees and costs of HSBC

5

Bank, which have been resolved by agreement of the Parties, and shall be treated as per Paragraph III(D) below.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS:**

I.  On September 22, 2014, this Court entered an Order resolving the Christiana Trust Objection [ECF #291]. Any and all other objections filed to confirmation of the Plan are **OVERRULED AS MOOT.**

II.  The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129 in its entirety, as modified on the record at the Confirmation Hearing or by separate Order of this Court.

III.  Accordingly, the Plan treatment accorded to all Classes is **APPROVED** as follows:

A.  **Class 1.**  The Debtor filed an objection to the Claim of the Internal Revenue Service [ECF #250] (the "IRS Objection").  The deadline to file a response to the IRS Objection is October 9, 2014, which date is expected to occur prior to the Effective Date.  Payments on account of Allowed Class 1 shall be made in accordance with the terms of a resolution of the IRS Objection beginning on the later of the Effective Date or the date of the entry of an Order resolving the IRS Objection.

B.  **Class 2.**  Proof of Claim No. 14 was withdrawn by Creditor [ECF #218]. Accordingly, the treatment provided to Class 2 in the Plan will be limited to Proof of Claim #2 and shall provide for payment to Class 2 in the amount stated on Proof of Claim #2 (plus accrued interest, if any) on the Effective Date or alternatively, in installment payments of $87.99 for a period of 41 months commencing on the Effective Date.

    C.    **Class 3.**

    1.    U.S. Bank National Association ("U.S. Bank") shall have an Allowed Claim secured by the real property located at 3465 Santa Barbara Drive, Wellington, Florida 33414 (the "Wellington Property").

    2.    Pursuant to an Agreed Order entered by the parties on October 1, 2014, (the "U.S. Bank Agreed Order"), the Debtor shall make current monthly payments to U.S. Bank with respect to its mortgage on the Wellington Property as provided by the original loan documents beginning October 1, 2014.

    3.    Payment shall be considered timely if received within 15 days of the 1st of the month after the payment is due. For sake of clarity, payments are due on the first of each month. The first regular payment will be deemed timely if received by October 16, 2014. Should the Debtor fail to timely make payment of the regular monthly payment and/or cure payment as specified in the U.S. Bank Agreed Order, the parties agreed that U.S. Bank shall be free to proceed with its in rem remedies pursuant to the default terms of the loan documents, and the automatic stay shall be lifted without further notice or hearing.

    4.    Additionally, in accordance with the U.S. Bank Agreed Order, upon entry of a separate Order of this Court approving the agreement between the Debtor and U.S. Bank, the Debtor shall make payments toward the cure of all prepetition and post-petition arrearages totaling $834,995.90 as of October 1, 2014 in equal monthly installments over a period not to exceed 60 months starting on or before October 1, 2014.

    5.    The Debtor, Trisun Financial Group, LLC, and U.S. Bank are granted stay relief for purposes of litigating the priority and extent of the respective parties' liens, if any, against the Wellington Property.

6.      The Debtor retains the right to raise any defense, affirmative defense, counter claim, or other remedy which the Debtor may assert to determine the priority and extent of liens against the Wellington Property, including his rights to seek modification through mediation in this Court.

D.      **Class 4.**

1.      **HSBC BANK**

a)      HSBC Bank shall have an Allowed Claim in the amount of $1,265.178.55 (the "HSBC's Allowed Claim").

b)      HSBC's Allowed Claim shall be secured by a first priority lien, senior in dignity to the claims of any other lienholder, against the Debtor's property located at 401 Carysfort Road, Key Largo, FL 33037 and legally described as LOT 1, BLOCK 5, OCEAN REEF PLAT NO. 1, AMENDED, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 5 AT PAGE 72, OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA. (the "Key Largo Property") in the amount of One Million One Hundred Sixty Thousand Dollars ($1,160,000) ("HSBC's Allowed Secured Claim").

c)      The balance of HSBC's Allowed Claim shall be Allowed as a general unsecured claim in the amount of One Hundred Five Thousand Eighty-Seven Dollars and 55/00 cents ($105,187.55) and shall be accorded the treatment provided to all Allowed Class 7 Claims.

d)      HSBC's Allowed Secured Claim shall be treated as follows:

(1) All provisions, covenants, and obligations (including, without limitation, escrow requirement provisions) under the note, security agreement, mortgage, and ancillary documents underlying HSBC Bank's Allowed Claim (collectively, the "HSBC Loan Documents") are deemed reinstated and in full force and effect except as expressly modified by the terms of this Confirmation Order. No provision of this Confirmation Order or the Plan, unless expressly modified herein shall alter, rescind, amend or serve as a novation of any provision of the HSBC Loan Documents.

(2) On the Effective Date, the Debtor shall make a principal reduction payment to HSBC Bank on account of HSBC's Allowed Secured Claim in the amount of Fifty Thousand Dollars ($50,000.00).

(3) The balance of HSBC's Allowed Secured Claim ($1,110,000.00) shall be payable over a term of 360 months and shall bear a fixed annual interest rate of five percent (5.00%) (the "Reinstated Loan")

(4) The term of payments of the Reinstated Loan shall begin on November 1, 2014 and mature on November 1, 2044 (the "Reinstatement Term").

(5) Monthly payments under Reinstated Loan shall be comprised of principal and interest in the amount of $5,958.72 plus escrow for taxes and insurance in the amount of $1,153.31 for a total monthly payment of $7,112.03 (which amount may vary periodically subject to ordinary course escrow adjustments).

(6) The Reinstated Loan shall at all times during the term of the Reinstated Loan remain escrowed for taxes and insurance. Escrow payments shall be subject to change based on normal servicing practices. Notice of payment changes will be provided pursuant to normal servicing practices.

e) <u>Reimbursement of post-petition escrow advances</u>: The Debtor shall reimburse HSBC Bank for the escrow amounts advanced post-petition in the amount of Thirteen Thousand Eight Hundred Thirty-Nine Dollars and 66/100 ($13,839.66) (the "<u>Escrow Reimbursement</u>"). The Escrow Reimbursement shall bear no interest and shall payable in sixty (60) equal monthly installments in the amount of $230.66. The monthly Escrow Reimbursement installment payments shall commence on November 1, 2014 and shall be remitted to HSBC Bank contemporaneously with the regular payments under the Reinstated Loan.

f) <u>HSBC Bank's attorneys' fees and costs</u>: HSBC Bank shall have an Allowed Class 7 Claim in the amount of $145,000.00 in satisfaction of HSBC Bank's request for an administrative claim on account of its substantial contribution to this case ("<u>HSBC's Allowed Fees and Costs</u>"). HSBC's Allowed Fees and Costs shall be remitted and made payable to the law firm of Ehrenstein Charbonneau Calderin, and shall be paid *pro rata* contemporaneously with all disbursements made to Allowed Class 7 Claims.

g) The treatment accorded herein to HSBC Bank on account of its Allowed Claim shall survive and remain in full force and effect in the event that: (i) this case is dismissed or converted, (ii) a trustee, examiner, or other fiduciary is appointed, and (iii) this Confirmation Order is modified or vacated. Moreover, the treatment accorded Class 4 shall not be modified, amended, rescinded, or altered except by express written consent of HSBC Bank.

h) The lien asserted by the Miriam M. Siskind Trust against the Key Largo Property is hereinafter subordinated to HSBC Bank's lien and shall at all times remain inferior in priority and dignity to the lien of HSBC Bank until such time as HSBC's Allowed Claim is satisfied in full.

i) Any and all liens, encumbrance or claims of JP Morgan Chase Bank, NA ("Chase Bank") against the Key Largo Property are hereby **NULLIFIED AND EXTINGUISHED**. Chase Bank shall have an Allowed Class 7 Claim in the amount $217,366.05 without any recourse against the Key Largo Property.

j) The foreclosure case pending in the Circuit Court of Monroe County related to the Key Largo Property shall be dismissed forthwith.

E. **Class 5**. On the Effective Date, the Debtor will continue making payments to George and Jeri Maler pursuant to the terms of their loan agreement in the amount of $986.00 per month. George and Jeri Maler will retain a first priority lien on the WPB Duplex and the "motorized vehicles". Any arrearages on the loan shall be added to the principal balance.

F. **Class 6**. To the extent it has not previously been paid, adjudicated as having been paid in full or disallowed, this claim will be paid in 41 monthly installments in the amount of $870.00, with the first payment due on the Effective Date and shall bear an interest at a rate of four and a half percent (4.5%) per year.

G. **Class 7**. Class 7 shall receive periodic pro rata dividends from the Plan Fund for a period of five (5) years with the first payment due on the Effective Date, and every year thereafter, as follows: (i) the Debtor will provide $11,400.00 during Year One, (ii) $43,309.00 during Year Two, (iii) $64,415.00 during Year Three, (iv) $94,231.00 during Year Four, and (v) $121,455.00 during Year Five.

H. **Class 8**. The equity Interests of Jeffrey Siskind are preserved under the Plan.

IV. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so

11

deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

      V.      All of the terms and provisions of the Disclosure Statement and Plan are approved.

      VI.      The provisions of the Plan and this Confirmation Order are binding on the Debtor, the Reorganized Debtor, each creditor, and every other interested party and this Order supersedes any other Order in this case.  To the extent of any conflict between this Order and any other Order in this case, this Order controls.

      VII.      Pursuant to Section 1141(d)(5)(A) of the Bankruptcy Code, the Debtor shall be entitled to receive a discharge upon further Order of this Court from all pre-Confirmation debts except as is provided in the Plan, upon completion of all payments required under the Plan.  Notwithstanding the foregoing, pursuant to Section 1141(d)(5)(B) of the Bankruptcy Code, the Debtor reserves the right, upon notice and a hearing (and subject to objections of parties in interest), to seek an earlier discharge in the event that the Debtor actually distribute to Allowed Unsecured Creditors sums that are equal to or greater than the value of the Plan Fund committed to under the Plan, and as modified herein.

      VIII.      As of the Effective Date, all property of the estate shall re-vest in the Reorganized Debtor.

      IX.      The Reorganized Debtor shall continue to operate in the ordinary course.

      X.      Any judgment obtained in any court other than this Court is null and void as a determination of the liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 U.S.C. § 1141.

All creditors whose debts are discharged by this Order and all creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any

action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

XI. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

XII. The Reorganized Debtor shall pay the U.S. Trustee the appropriate amounts required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements by the Reorganized Debtor for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6) and file post confirmation monthly operating reports, until the earlier of the closing of the instant case by the issuance of a final decree by the Court, or upon the entry of an order by this Court dismissing the case or converting it to another Chapter under the U.S. Bankruptcy Code.

XIII. The Debtor retains the right, subject to available cash, to pay the total distribution for General Unsecured Creditors before the scheduled payment period runs.

XIV. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court-approved local form.

XV. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all any and all remedies available to him to defend or prosecute any action to determine the validity, priority, and extent of any lien asserted against property of the estate unless otherwise resolved in the Second Amended Plan, as modified by the terms of this Confirmation Order.

XVI. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacatur shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacatur of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacatur of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Order and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

XVII. All executory contracts and unexpired leases listed in Article 5 of the Plan are deemed assumed as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as it deems appropriate in the exercise of its business judgment without the need for a motion and hearing in this Court.

XVIII. The Bankruptcy Court shall retain jurisdiction:

A. To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

B. To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

C. To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

D. To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

E. To determine the validity, extent and priority of all liens, if any, against property of the estate;

F. To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

G. To determine all objections to Administrative Claims;

H. To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

I. Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

J. To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

K. To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

      L.      To determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

      M.      To enforce any and all releases and injunctions created pursuant to the terms of the Plan;

      N.      To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

      O.      To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan; and

      P.      To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

      XIX.      The Debtor shall be the disbursing agent.

      XX.      This Court may conduct a post-confirmation status conference on Tuesday, July 14, 2015 at 9:30 a.m. in Courtroom 801-A, U.S. Bankruptcy Court, Southern District of Florida, 1515 N. Flagler Drive, West Palm Beach, FL 33401 to determine whether the Reorganized Debtor has complied with the provisions of this Confirmation Order; and whether the Debtor has timely filed the Final Report.  The Court may also consider any other pending matters.  If the Final Decree is entered before this date, the post-confirmation status conference will be canceled.

# # #

SUBMITTED BY:
Jacqueline Calderin, Esq.
jc@ecclegal.com
Ehrenstein Charbonneau Calderin
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T 305.722.2002      F. 305.722.2001

Copy furnished to: Attorney Calderin, who is directed to serve a conforming copy upon all interested parties.